DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Telephone:  (212) 557-7200
Facsimile:  (212) 286-1884
William H. Mack, Esq. (WM-7786)
E-mail: whm@dhclegal.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMITY DIGITAL LLC,                                          _____ Civ. _____

                                   Plaintiff,

              -against-                                     **COMPLAINT**

HELIX DIGITAL INC. and JAMES WALTZ,

                                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      Plaintiff, AMITY DIGITAL LLC ("Amity" or "Plaintiff"), by and through its attorneys, DAVIDOFF HUTCHER & CITRON, LLP, bring the following Complaint against Defendant HELIX DIGITAL INC. ("Helix" or the "Company") and RICO Defendant JAMES WALTZ ("Waltz") (hereinafter collectively "Defendants," unless otherwise specified).  The allegations of the Complaint are based on the knowledge of Plaintiff and on information and belief, including the investigation of counsel and review of publicly available information.

**OVERVIEW OF DEFENDANTS' UNLAWFUL CONDUCT**

      1.    This lawsuit seeks to remedy a fraud perpetrated by a relatively unknown advertising technology ("AdTech") company, Helix Digital, Inc. ("Helix")[1], that for years has deceived Plaintiff and numerous other companies into entering business deals which resulted in

---

[1] Helix Digital, Inc., Helix, and the Company shall be used interchangeably throughout this Complaint.

little to no payoff for these companies and left them hundreds of thousands of dollars owed with difficulty securing any legal recourse against Helix.

2.      Defendants' deceptive scheme works as follows.  Helix presents itself as Helix Digital Partners, LLC ("Digital Partners")[2] an AdTech company incorporated in Delaware which provides video distribution, publisher monetization, and other advertising services to its clients. Under the Digital Partners name, Helix induces other companies to enter a business relationship, and its agents even sign agreements on behalf of Digital Partners instead of Helix Digital, Inc. After Helix defaults on its obligations under such agreements, its counterparties and creditors find difficulty obtaining any legal recourse because Helix does not identify itself as Helix Digital, Inc. on its website, contracts, or any official company documents.  Instead, Helix's counterparties are apt to pursue legal recourse against the only Helix Digital Partners, LLC incorporated in Delaware, a hydroelectric power company that no longer does business under the Digital Partners name and has no affiliation with Waltz or Helix Digital, Inc.

3.      The fact that Helix Digital, Inc. is similar in name to Helix Digital Partners, LLC does not excuse the actions of Defendants as a mere mistake.  Plaintiff entered into a series of agreements, an Insertion Order, Master Services Agreement ("MSA"), and Indebtedness Acknowledgement and Payment Plan Agreement ("Indebtedness Agreement") with Helix under the Digital Partners name, which were signed by Waltz and Thomas Walsh ("Walsh") in their purported capacities as Chief Executive Officer ("CEO") and co-presidents of Digital Partners.  As CEO and co-presidents of Helix Digital, Inc., it is unbelievable that either Waltz or Walsh would

---

[2] Digital Partners shall be used throughout this Complaint in reference to the entity name that Defendants used to conduct its fraudulent scheme and as the non-affiliate Delaware entity registered under the name Helix Digital Partners, LLC.

genuinely be mistaken as to the correct name of their entity or unaware of the consequences of conducting business on behalf of an unaffiliated entity.

4.      After Helix defaulted on its obligations to Plaintiff under the Indebtedness Agreement, namely by ceasing to make payments to pursuant to the Agreement's payment schedule, Plaintiff pursued recourse by filing a Motion for Summary Judgment in Lieu of Complaint against Digital Partners, using the information available on the Delaware Secretary of State's entity directory to find the address of its registered agent.  Shortly thereafter, Plaintiff was contacted by Nick Ivancic ("Ivancic"), general counsel for Eagle Creek Renewable Energy, LLC ("Eagle Creek"), who notified Plaintiff that the Digital Partners entity it served is an affiliate of Eagle Creek and had never done business with Plaintiff or Waltz.  Invancic then informed Plaintiff that it received similar communications from other AdTech industry entities demanding payment from Digital Partners for a sum owed.

5.      As more fully described in this Complaint, Waltz is engaging in racketeering activity to conduct and participate in the affairs of Helix as part of a scheme to defraud companies out of hundreds of thousands of dollars through deceptive contracts.  Furthermore, Waltz directed Helix executives to sign such contracts and conduct business on behalf of Digital Partners, an entity to which they have no affiliation, to create a roadblock for any counterparties or creditors who attempt to sue Helix for defaulting on its obligations.

6.      Plaintiff has been harmed by Defendants' unlawful and deceptive practices.  To date Plaintiff still has not received the sum owed by Helix under the Indebtedness Agreement, which amounts to an outstanding balance of $1,132,927.05.  Thus, Plaintiffs bring this action for monetary damages, punitive damages, and attorneys' fees caused by Waltz's violation of RICO,

Helix's breach of contract, and both Defendants' violations of common law fraud, fraudulent concealment, negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

7.     This Court has jurisdiction over the claims asserted in this action pursuant 28 U.S.C. § 1332 (d) because the amount in controversy exceeds $75,000 and diversity of citizenship exists between Plaintiff and Defendants.

8.     This Court also has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because the action arises under RICO, 18 U.S.C. § 1961 *et seq*.  In addition, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

### Personal Jurisdiction

9.     This Court has specific personal jurisdiction over Defendants James Waltz and Helix Digital, Inc. because they maintain sufficient contacts in this jurisdiction.

### Venue

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District and Plaintiff is incorporated and conducts business in New York County.

## PARTIES

11.     Plaintiff Amity Digital LLC is a limited liability company organized and existing under the laws of New York, regularly conducts business in New York, and has an address at 6 Wren Court, Old Brookville, New York 11545.

4

12.     Defendant James Waltz is an individual residing at 4 Circle Drive, Rumson, New Jersey 07760, regularly conducts business in New York, and his conduct as described below occurred in New York.  Waltz is the CEO and co-president of Helix Digital, Inc.

13.     Defendant Helix Digital, Inc. is a corporation organized and existing under the laws of Delaware and is headquartered at 4 Circle Drive, Rumson, New Jersey 07760, regularly conducts business in New York, and its conduct as described below occurred in New York.

## FACTUAL ALLEGATIONS

### I.      WALTZ'S RACKETEERING ACTIVITY (THE "WHO")

#### A.      The Enterprise: Helix Digital, Inc.

14.     Defendant Helix Digital, Inc. is an AdTech company incorporated in Delaware on March 11, 2015 and headquartered in New Jersey which describes itself as a "full-service sales extension and monetization solution for premium online advertisers" on its website.  The website further states that Helix provides video distribution, publisher monetization, and other advertising services for its clients.

15.     Helix's website refers to Helix as "Helix Digital Partners, LLC" instead of "Helix Digital, Inc." and states that its digital team comprises of three individuals: Steve Katz, Tom Walsh, and Mandie Lee.  The only reference to Waltz's involvement with Helix on its website is contained in Walsh's bio, which states that "Tom [Walsh] met Jim [Waltz] in 1997 at DoubleClick where they worked together in media sales."

16.     Helix induces companies to enter into business with it for the exchange of advertising services under the Digital Partners name, and its agents would then sign such agreements on behalf of Digital Partners instead of Helix Digital, Inc.  Upon Helix's eventual default on its obligations under such agreements, Helix would "go dark" and cease all

communication, leading its counterparties to pursue action against the only Helix Digital Partners, LLC incorporated in Delaware, a hydroelectric power company unaffiliated with Helix or any of its agents, instead of pursing action against Helix Digital, Inc.

17.     Helix's activity of entering contracts for the exchange of advertising services is a substantial factor in Helix's operations and economics.

18.     Helix's actions affect interstate commerce because the exchange of services took place between Helix, a company incorporated in Delaware and located in New Jersey, and out-of-state companies, including Plaintiff, which is incorporated and headquartered in New York.

19.     With respect to Plaintiff's RICO count against Waltz, Helix is the RICO enterprise, in other words, the vehicle through which Waltz's unlawful activity is committed.

20.     Waltz concocted and implemented this fraudulent scheme separate and apart from his regular duties in running and overseeing Helix's core business of providing advertising services.

### B.     The Mastermind: James Waltz

21.     RICO Defendant James Waltz is Helix's founder, CEO, and co-president.

22.     Waltz directs and controls the operations of Helix, has authority to conduct business on behalf of Helix, and is responsible for the fraudulent scheme at issue in this litigation.  Waltz purposefully causes Helix to conduct business as Digital Partners, knowing that Helix's counterparties would have difficulty pursuing action against the correct entity after Helix defaults on its contractual obligations.  Upon information and belief, Waltz directed, developed, managed, and/or substantially assisted in the deceptive advertisements and contract scheme.

23.     Waltz directed Walsh to sign the Insertion Order and MSA on behalf of Digital Partners and signed the Indebtedness Agreement himself on behalf of Digital Partners. Furthermore, Waltz served as Plaintiff's main point of contract with Helix.

24.     After Helix defaulted on its obligations to Plaintiff under the Indebtedness Agreement, Plaintiff was unable to contact Waltz or any other Helix agent after Waltz "went dark" and ceased responding to any of Plaintiff's communications.

25.     Waltz participated in and conducted the operations of the Helix enterprise in order to carry out racketeering actively, namely the fraudulent contracts scheme.

## II.   HOW THE RACKETEERING ACTIVITY WORKS (THE "WHAT," "WHERE," "WHEN," AND "WHY")

### A.   The Fraudulent Scheme

26.     Helix Digital, Inc. is an AdTech company incorporated in Delaware on March 11, 2015.  Helix Digital Partners, LLC is a hydroelectric power company incorporated in Delaware on December 7, 2017.  Digital Partners no longer does business under its own name, but instead operates under the umbrella of Eagle Creek Renewables.  Digital Partners has no affiliation with Plaintiff, Waltz or the advertising industry in general.

27.     Despite the fact that a search of the Delaware Secretary of State's entity directory quickly reveals that the Digital Partners name has been in use by the Eagle Creek affiliate since 2017, Helix purposefully decided to continue advertising itself, conducting business, and signing agreements as Digital Partners without any acknowledgment to its counterparties and creditors of the Company's legal name or the existence of the Eagle Creek affiliate.

28.     Helix, under the Digital Partners name, entered contracts with brands, advertising agencies, and AdTech companies for the exchange of advertising services.  For example, Helix, as advertiser, agreed to provide advertising material to Plaintiff, the publisher, who would then

market the material through distribution channels.  After Helix defaulted on its obligations under such agreements, it would cease all communications with its counterparty, leaving that party to seek legal recourse against the Eagle Creek affiliate, which is the only entity named Helix Digital Partners, LLC incorporated in Delaware.

29.     Waltz, as the founder, CEO, and co-president of Helix, knew or should have known that the correct name of his entity is Helix Digital, Inc. and that he was not authorized to sign agreements on behalf of Digital Partners.  Furthermore, by virtue of his position, Waltz also knew or should have known that an unaffiliated entity was incorporated under the Digital Partners name in Delaware since 2017.

30.     Any reasonable contracting party expects that its counterparty represents itself honestly and accurately, including that it is registered under the same name presented on its website and contracts.  Any reasonable contracting party expects that its counterparty's signatories are signing on behalf of the entity for which they purport to sign.  Moreover, any reasonable contracting party expects that if its counterparty were to default on its obligations, it would be able to pursue legal recourse by serving papers on the entity's registered agent at the address as listed on the respective Secretary of State website directory.

31.     When Helix's counterparties and creditors attempt to serve Digital Partners with papers or other communications demanding payment owed, those parties quickly discover that Digital Partners is an entity completely unaffiliated with the AdTech industry or Waltz. Resultingly, such parties waste time and resources by struggling to find and initiate a lawsuit against the proper entity.

32.     Waltz knew or should have known that the parties attempting to contract with his entity would rely on his and Helix's representations that Helix was legally known as Helix Digital Partners, LLC and registered by no other name.

33.     Waltz has no good faith justification for his deceptive business scheme.  The only reason Helix presents itself as Digital Partners and not Helix Digital, Inc. is to evade its creditors and create a roadblock for parties attempting to pursue legal recourse against Helix for defaulting on its contractual obligations.

34.     Upon information and belief, Waltz has been signing all contracts binding Helix as the CEO and co-president of Digital Partners and not Helix Digital, Inc.

35.     Upon information and belief, Waltz directed Helix's executives to sign all contracts binding Helix on behalf of Digital Partners and not Helix Digital, Inc.

36.     As a result of Waltz's fraudulent practices, numerous entities and individuals have been fleeced out of hundreds of thousands of dollars due to difficulty pursuing legal recourse against Helix for defaulting on its obligations under such agreements.

### III.     HOW DEFENDANTS DECEIVED PLAINTIFF

37.     Plaintiff entered what it believed to be a business relationship with Helix under the Digital Partners name on or about July 2020.  On July 1, 2020, Amity CEO Chris Connaughton ("Connaughton") signed an Insertion Order for such services on behalf of Plaintiff, and Thomas Walsh signed on behalf of Helix/Digital Partners as its alleged president.

38.     Under the terms of the Insertion Order, Helix, as advertiser, would provide advertising material to Plaintiff, as publisher, which would then market and promote the advertising material through distribution channels.  The Insertion Order provides that the legal

name of Helix is Helix Digital Partners, LLC, that it is a limited liability company organized in the United States, and that it has a business address of 4 Circle Drive, Rumson, New Jersey 07760.

39.     In connection with the Insertion Order, Plaintiff entered into an MSA with Helix on July 23, 2020.  The MSA provides, in handwriting, that the contacting party is registered as Helix Digital Partners, LLC, and that it is a limited liability company incorporated in Delaware with business operations at 4 Circle Drive, Rumson, NJ 07760.  Like the Insertion Order, Connaughton signed the MSA on behalf of Plaintiff in his capacity as CEO, and Walsh signed on behalf of Helix/Digital Partners as its alleged president.

40.     Helix eventually fell out of compliance with respect to its obligations under the MSA, and so on June 9, 2023, Plaintiff and Helix entered into an Indebtedness Agreement signed and executed on June 9, 2023.  Stephen Magli ("Magli") signed on behalf of Plaintiff in his capacity as Manager, and Waltz signed on behalf of Helix/Digital Partners as its purported President and CEO.

41.     In the Indebtedness Agreement, Plaintiff and Helix memorialized the repayment plan for the amounts owed by Helix to Plaintiff pursuant to a repayment schedule (the "Repayment Plan") which was attached to the Agreement as Exhibit A.  The Repayment Plan provides that Helix agreed to pay Plaintiff twenty-two (22) installments of the outstanding $1,544,270.16 debt between May 22, 2023, and September 15, 2024.

42.     On May 22, 2023, Helix paid Plaintiff the first $50,000 installment of the $1,544,270.16 debt balance.  Helix continued making timely payments until September 15, 2023, when Helix missed the $285,646.15 payment due as per the Repayment Plan.  Shortly after missing its September 15 payment, and after Plaintiff's threat of litigation to recover the sum owed, Defendants "went dark" and ceased communications with Plaintiff after September 29, 2022.

43.     Before Helix missed its September 15, 2023 payment, Magli sent Waltz an inquiry via iMessage regarding whether the Company would be able to make the payment due on that day. Waltz responded by stating that the Company was owed an outstanding balance owed by Column 6 LLC ("Column6"), a company to which Helix served as a supply partner, and that it was pushing Column6 for payment.

44.     On September 5, 2023 and September 11, 2023, Magli reached out to Waltz again via iMessage asking whether Helix would be able to make its payment due on September 15, 2023. Waltz responded that the Company was waiting for payment from Column6, that it was in the process of attempting to bridge that gap by finding additional investment, and that once found, it would "continue the payment plan or paid [sic] in full," but that timing was "tbd."

45.     On September 15, 2023 and September 20, 2023, Magli informed Waltz that he reached out to Column6, which informed him that there was "no large outstanding balances with any of [Column6's] supply partners."

46.     The last communication from Defendants to Plaintiff took place on September 29, 2023 via another iMessage exchange between Waltz and Magli.  During the exchange, Magli informed Waltz that Plaintiff would file suit against Helix for the outstanding balance.

47.     On that same day, Waltz sent Magli a series of screenshots between Waltz and an unnamed individual who Waltz claimed was a debtor of Helix, and from whom Waltz appeared to demand payment.  Magli demanded that Waltz send him the name of the individual and proof of non-payment, to which Waltz responded, "That's proof."

48.     Magli attempted to contact Waltz again via iMessage on October 2, 2023, requesting a phone call, but Waltz and Helix "went dark" on Magli and did not send Magli any further calls or text messages.

49.     Under the terms of the Repayment Plan, Helix was also due to pay Plaintiff $189,477.00 on October 15, 2023, and $39,119.42 on November 15, 2023.  After missing the September 15 payment of $285,646.15, however, Helix paid Plaintiff only $50,000 on October 17, 2023, and $50,000 on October 30, 2023.  Such payments do not satisfy the balanced owed on September 15 or October 15, and therefore cannot be credited as full payment of the November 15 sum owed.  Helix thus failed to make three consecutive payments pursuant to the Repayment Plan.

50.     Under Paragraph 4 of the Indebtedness Agreement, Helix's failure to make three consecutive payments pursuant to the Repayment Plan puts Helix in default of the Agreement.[3]

51.     On November 17, 2023, Plaintiff filed a Motion for Summary Judgment in Lieu of Complaint against Helix to recover the total sum owed under the Agreement.  Pursuant to Waltz and Helix's representations under the MSA and Indebtedness Agreement, Plaintiff served the only Helix Digital Partners, LLC incorporated in Delaware, which was incorporated on December 7, 2017, and has an address at 251 Little Falls Drive, Wilmington, Delaware 19808, with a registered agent located 80 State Street, Albany, New York 12207.

52.     On November 17, 2023, however, counsel for Plaintiff each received a phone call and voice message from Nick Ivancic, Associate General Counsel at Eagle Creek Renewable Energy, who left voicemail messages claiming that its affiliate, Helix Digital Partners, LLC, received Plaintiff's papers, but that its affiliate was the wrong Helix Digital Partners, and that it had no knowledge of any current or prior relationship with Plaintiff.  Ivancic further requested that Plaintiff's counsel dismiss the filings against Digital Partners.

---

[3] Paragraph 4 of the Indebtedness Agreement provides:

"If Helix fails to make three consecutive timely payments pursuant to the Repayment Plan schedule (for purposes of which, 'timely' shall mean within five (5) business days following the applicable Repayment Plan date), then Helix shall be deemed to be in default of this Agreement and the Creditor shall have the right to pursue all permissible legal action, claims and remedies against Helix and/or pursuant to Section 8 of this Agreement."

53.    On that same day, Ivancic sent Plaintiff's counsel a follow up email again claiming that Plaintiff had filed an action against the wrong Helix Digital Partners, LLC, that the Helix Digital Partners, LLC formed in Delaware on December 7, 2017 is an affiliate of Eagle Creek Renewable Energy, LLC and that it has no business dealings with Plaintiff.  Ivancic further claimed that Waltz has no relationship with Eagle Creek or any of its affiliates, including Digital Partners, and again requested that Plaintiff dismiss the filings against the Eagle Creek affiliate.

54.    Ivancic further informed Plaintiff that Digital Partners received similar inquiries and demands to that of Plaintiff's.  Ivancic then sent Plaintiff a demand letter it received on November 7, 2023 from counsel for an entity named Trendesk.TV LLC d/b/a Bidfuse ("Bidfuse"), demanding payment of a sum of $235,456.00 purportedly owed by Digital Partners.  Ivancic asserted that neither Digital Partners nor Eagle Creek had any affiliation with Bidfuse.

55.    Plaintiff's counsel undertook an extensive search for the correct Helix Digital Partners, LLC, but found only the Eagle Creek affiliate on the Delaware and New York Secretary of State directories.  Plaintiff's counsel did not find any other entity named Helix Digital Partners, LLC on the Delaware, New York, New Jersey or Florida Secretary of State entity directories.

56.    Because there is only one Helix Digital Partners, LLP incorporated in Delaware, the Eagle Creek affiliate, it became apparent to Plaintiff that Defendants were conducting business and signing contracts on behalf of an unaffiliated entity for the purpose of evading liability under its agreements if Helix were to default on its obligations.

57.    As a result of Defendants' conduct, Plaintiff entered the MSA, Insertion Order, and Indebtedness Agreement with the understanding that it would have legal recourse against Helix in the event of default.  Plaintiff is still owed $1,132,927.05 under the Indebtedness Agreement, but Plaintiff has difficulty pursuing any legal recourse against Helix because (1) the Insertion Order,

MSA, and Indebtedness Agreement all state that the contracts are between Plaintiff and Digital Partners, which Plaintiff cannot sue, and not Helix Digital, Inc., and (2) because Helix advertises itself as Digital Partners and there is only one entity incorporated in Delaware under the Digital Partners name, it is painstakingly difficult to find the proper entity to sue.

58.     Accordingly, Plaintiff has no legal recourse against the entity registered as Helix Digital Partners, LLC, but instead must pursue recourse against Waltz in his personal capacity and Helix Digital, Inc. for the entire amount owed to Plaintiff under the Indebtedness Agreement, plus punitive damages and interest.

## IV.    DEFENDANTS' UNSCRUPULOUS AND FRAUDLENT SCHEME RAUNS AFOUL OF CONTRACT LAW AND THE COMMON LAW

59.     Defendants make the following misrepresentations and omissions that defrauded Plaintiff and other like companies and violated the common law:

    a.  Defendants misrepresent, on both the Helix website and contracts, that the registered name of the entity is Helix Digital Partners, LLC when it is actually Helix Digital, Inc.;

    b.  Defendants misrepresent that Waltz or any of Helix's agents have authority to enter contracts and conduct business on behalf of an entity registered in Delaware as Helix Digital Partners, LLC;

    c.  Defendants fail to disclose that the registered name of the Helix entity is Helix Digital, Inc. and not Helix Digital Partners, LLC;

    d.  Defendants fail to disclose that the Helix entity was never registered as Helix Digital Partners, LLC, and that a different, unaffiliated company registered under the Digital Partners name in Delaware in 2017; and

    e.  Defendants misrepresent Helix's ability and intention to fulfill its obligations under its agreements with Plaintiff and other contracting parties, including by falsely claiming that Helix's non-payment is due to the debts of third-parties, that Helix is in the process of obtaining funding from third-party investors, and that it will be able and willing to repay any debts owed once such funding is obtained.

60.     Defendants fraudulently concealed from Plaintiff the legal name of the Helix entity and that neither Waltz nor any Helix agents had any authority to bind an entity registered as Digital Partners to any agreement.

61.     Defendants fraudulently concealed from Plaintiff Helix's ability and intention of fulfilling its obligations under the Indebtedness Agreement, namely its ability to pay the debt balance owed to Plaintiff.

62.     As the founder, CEO, and co-president of Helix Digital, Inc., Waltz had a duty to conduct business under and on behalf of Helix Digital, Inc. from the onset of its incorporation and especially after the incorporation of the Digital Partners Eagle Creek affiliate in 2017.

63.     Defendants' omissions and representations are false and deceptive, and designed to take advantage of the good faith of companies like Plaintiff.

64.     Defendants' omissions and representations are intentional because by virtue of Defendants' positions within the Company, they knew to conduct business and sign agreements on behalf of the Company's registered name, that a different company was registered in Delaware as Digital Partners, and that their failure to conduct business under the correct entity name do so would mislead its counterparties into pursuing legal action against the wrong entity.

65.     Defendants' omissions and representations are intentional because by virtue of Defendants' positions within the Company, they knew whether Helix was owed by a third-party debtor, the identity of that debtor, and whether Helix was realistically in the process of obtaining third-party funding to continue with the Repayment Plan.

66.     In the alternative, Defendants' omissions and representations constitute negligent misrepresentation because by virtue of Defendants' positions within the Company, they should have known to conduct business and sign agreements on behalf of the Company's registered name,

that a different company was registered in Delaware as Digital Partners, and that their failure to conduct business under the correct entity name would mislead its counterparties into pursuing legal action against the wrong entity.

67.     Defendants' omissions and representations constitute negligent misrepresentation because by virtue of Defendants' positions within the Company, they should have known whether Helix was owed by a third-party debtor, the identity of that debtor, and whether Helix was realistically in the process of obtaining third-party funding to continue with the Payment Plan.

68.     Defendant Helix breached the Indebtedness Agreement by failing to make at least three consecutive payments to Plaintiff between September 15, 2023 through present day.

69.     Defendants were unjustly enriched by their misrepresentations and omissions, as Defendant Helix would have been made to pay Plaintiff the full amount of the debt owed under the Indebtedness Agreement if Plaintiff had filed its Motion of Summary Judgment in Lieu of Complaint against Helix Digital, Inc. instead of Digital Partners.

70.     Plaintiff and other reasonable contracting parties expect honesty and integrity from its counterparties and debtors and expected that Defendants would conduct business and enter agreements under its registered name, that its agents would not sign agreements on behalf of an unaffiliated entity, and that they would honestly and accurately disclose the entity's ability to timely fulfill its obligations under the Indebtedness Agreement.  Plaintiff therefore reasonably relied on Defendant's representations when it entered into the Insertion Order, MSA, and Indebtedness Agreement.  No company would enter into an agreement, especially an agreement to repay a debt, if its signatories knew that its counterparty's signatory was signing on behalf of an entity to which it was unaffiliated, and that the registered name of the entity to which it believed to be its counterparty was not easily discoverable.

71.     Plaintiff was damaged as a result of Helix's breach of the Indebtedness Agreement in the amount of the outstanding balance of $1,132,927.05, plus interest, attorney's fees, and costs.

72.     Plaintiff was further damaged as a result of Defendants' fraudulent acts and omissions in an amount to be ascertained by the court, but in an amount not less than the $1,132,927.05 outstanding balance of the Indebtedness Agreement, plus interest, attorney's fees, and costs.

## **RULE 9(B) ALLEGATIONS**

73.     To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

74.     WHO:

    i.   RICO count:  RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions of fact so that companies such as a Plaintiff would have difficulty seeking legal recourse against the enterprise but instead pursue recourse against a different entity with no affiliation to either Defendant.

    ii.  Non-RICO counts:  Defendants, in a scheme devised by Waltz and acting through Helix's executive team, make material misrepresentations and omissions of fact in conducting business and entering agreements with its counterparties.

75.     WHAT (RICO count):

i.  RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations by signing contracts and representing that the entity was registered as Helix Digital Partners, LLC, an existing entity with no affiliation to either Defendant.

ii. RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to falsely and deceptively create the impression to its counterparties that the Company is able and intends to fulfill its obligations under its agreements before ceasing communications.  Such counterparties are left to discover that they do not have any legal recourse against the entity they believed to have signed the agreements, Digital Partners.

iii. By conducting business as Digital Partners instead of Helix Digital, Inc., RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise by using the enterprise as a vehicle to evade its legal obligations and create a roadblock for parties attempting to pursue recourse against the Company.

iv.  Non-RICO counts:

1. Defendants make material misrepresentations by advertising itself and conducting business as Helix Digital Partners, LLC when the Company's registered name is Helix Digital, Inc. and an unaffiliated entity has been registered in Delaware under the Digital Partners name since 2017.

2. Defendants make material misrepresentations by falsely and deceptively asserting that the Company is able and intends to fulfill its obligations under its agreements with Plaintiff.

3. Defendants make material omissions by failing to disclose that the legal name of the Company is Helix Digital, Inc. and not Helix Digital Partners, LLC when an unaffiliated entity has been registered in Delaware under the Digital Partners name since 2017.

4. By conducting business as Digital Partners and failing to disclose the Company's registered name, Defendants falsely and deceptively create the impression that its counterparties, including Plaintiff, will be able to seek legal recourse against Digital Partners.  Defendants make these misrepresentations and omissions even though Defendants know that its counterparties are apt to sue the wrong entity instead of Helix Digital, Inc.

76. WHERE:

   i. RICO count:  RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions on the Company's website and contracts, which were viewed, received, and signed by Plaintiff and upon which Waltz intended Plaintiff to rely.

     ii.   Non-RICO counts:  Defendants make their material misrepresentations and omissions on Helix's website and contracts, which was received by Plaintiff and upon which Defendants intended Plaintiff to rely.

77.   WHEN:

     i.   RICO count:  RICO Defendant Waltz has been conducting and participating in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud by conducting business under the name of a completely unaffiliated entity for years, ever since Digital Partners was incorporated on December 7, 2017.  Waltz's racketeering activity is ongoing.  For specific examples, Waltz and Walsh signed the Insertion Order on July 1, 2020, the MSA on July 23, 2020, and the Indebtedness Agreement on June 2, 2023, all on behalf of Digital Partners.  The Insertion Order expressly states that the Company's legal name is Helix Digital Partners, LLC, and the Helix website continues to refer to the Company as Helix Digital Partners, LLC. Waltz used the Helix Digital, Inc. enterprise to make the same or substantially similar misrepresentations and omissions of material facts to other parties contracting with Helix, including Bidfuse.

     ii.   Non-RICO counts:  Defendants have been using the fraudulent scheme for years, and the scheme is ongoing.  For specific examples, Defendants made the material misrepresentations and omissions when Waltz and Walsh signed the Insertion Order on July 1, 2020, the MSA on July 23, 2020, and the Indebtedness Agreement on June 2, 2023, all on behalf of Digital Partners.  The Insertion Order expressly states that the Company's legal

name is Helix Digital Partners, LLC, and the Helix website continues to refer to the Company as Helix Digital Partners, LLC.  Defendants further make the same or substantially similar misrepresentations and omissions of material facts to other parties with which Helix had a relationship, including Bidfuse.

78.    WHY:

i.   RICO count:  RICO Defendant Waltz – knowing that Plaintiff and other reasonable parties to an agreement expect honesty and integrity from its counterparties and expecting that the agreements' signatories were signing on behalf of the company they believed to be affiliated with and bound by the agreements – conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions for the purpose of inducing Plaintiff and other companies to enter into agreements, such as the Indebtedness Agreement, knowing that if the Company were to default on its obligations under such agreement, Plaintiff would have difficulty pursuing recourse against the Company.  As a direct result of these material representations and omissions, Waltz has successfully evaded paying Plaintiff the balance of $1,132,927.05 owed under the Indebtedness Agreement.  Additionally, Plaintiff was unable to serve the Company its Motion for Summary Judgment in Lieu of Complaint it had prepared to recover that balance, causing Plaintiff to expend additional time and resources in its pursuit of that recovery.

ii. Non-RICO counts:    Defendants – knowing that Plaintiff and other reasonable parties to an agreement expect honesty and integrity from its counterparties and expecting that the agreements' signatories were signing on behalf of the company they believed to be affiliated with and bound by the agreements – made these omissions and misrepresentations with the purpose of inducing Plaintiff and other companies to enter into agreements, such as the Indebtedness Agreement, knowing that if the Company were to default on its obligations under such agreement, Plaintiff would have difficulty pursuing recourse against the Company.  As a direct result of these material representations and omissions, Defendants have successfully evaded paying Plaintiff the balance of $1,132,927.05 owed under the Indebtedness Agreement.  Additionally, Plaintiff was unable to serve the Company its Motion for Summary Judgment in Lieu of Complaint it had prepared to recover that balance, causing Plaintiff to expend additional time and resources in its pursuit of that recovery.

79. HOW (RICO count):

i. RICO Defendant Waltz uses Helix Digital, Inc.'s legitimate advertising service activities as a cover to carry out racketeering activity, i.e., his fraudulent scheme to enter and default on contracts, evade liability, and leave the Company's counterparties with difficulty recovering the sums owed under such agreements.

ii. RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the

enterprise as a vehicle to make material misrepresentations and fail to disclose material facts concerning the Company's ability and intention of fulfilling its obligations under the Indebtedness Agreement by representing that the Company would continue with the Repayment Plan upon receiving money from a debtor and that it was in the process of obtaining third-party investment.  In reality, the Company anticipated that it would be unable or unwilling to continue with the Payment Plan, and Waltz made these representations to dissuade Plaintiff from filing suit.

iii.  RICO Defendant Waltz conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and fail to disclose material facts by conducting business and signing agreements under the Digital Partners name instead of the Company's registered name. In reality, there is an unaffiliated entity registered under the Digital Partners name, and Defendant Waltz devised the scheme so that the Company could evade liability upon defaulting on its obligations.

iv.  There is only one entity registered as Helix Digital Partners, LLC in Delaware – the hydroelectric power company that no longer operates under the Digital Partners name but instead under the umbrella of Eagle Creek. Upon Helix's default on its obligations under the Indebtedness Agreement, Plaintiff utilized the Delaware Secretary of State's website to find the address of Helix Digital Partners, LLC, which it them served with papers. Unknowingly, due to Waltz's misrepresentations and omissions, Plaintiff

served the Eagle Creek affiliate and not the Company. Without the Company's registered name on its website or contracts, Plaintiff expended significant time and resources to find the correct entity.

80. HOW (Non-RICO counts):

    i.  Defendants make material misrepresentations and fail to disclose material facts by conducting business and signing agreements under the Digital Partners name instead of the Company's registered name.  In reality, there is an unaffiliated entity registered under the Digital Partners name, and Defendants make these representations so that the Company could evade liability upon defaulting on its obligations.

    ii.  Defendants make material representations and fail to disclose material facts by representing that the Company would continue with the Repayment Plan upon receiving money from a debtor and that it was in the process of obtaining third-party investment.  In reality, the Company anticipated that it would be unable or unwilling to continue with the Payment Plan, and Defendants made these representations to dissuade Plaintiff from filing suit.

## CAUSES OF ACTION

## COUNT I

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT,
18 U.S.C. § 1962(c)
(AGAINST RICO DEFENDANT JAMES WALTZ)**

81.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

    **a.  The Enterprise:  Non-RICO Defendant Helix Digital, Inc.**

82.     Helix Digital, Inc., a corporation incorporated in Delaware and headquartered in New Jersey, is a RICO enterprise pursuant to 18 U.S.C. § 1961(4).  The company affects interstate commerce by contracting for the exchange of advertising services with out of state companies.  On information and belief, Helix's servers are not located in New York and its wire transmissions are made in interstate commerce.  Helix Digital, Inc. is the RICO enterprise, not a RICO defendant.

### b.   The RICO Defendant: James Waltz

83.     At all relevant times, as described below, in violation of 18 U.S.C. § 1962(c), RICO Defendant James Waltz conducted the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using it as a vehicle to engage in a pattern of racketeering activity (i.e. the fraudulent contracts scheme), which Waltz has devised and carries out regularly using interstate wires to communicate and enter fraudulent agreements with its counterparties.  This racketeering activity violates 18 U.S.C. § 1962(c).  Additionally. Defendant Waltz is about to conduct the affairs of Helix Digital, Inc. through his position as the founder, CEO, and co-president of the Company. Upon information and belief, RICO Defendant Waltz directed, developed, managed, and/or substantially assisted in Helix's misleading and deceptive business practices.

### c.   The Racketeering Activity

84.     RICO Defendant Waltz uses Helix Digital, Inc.'s legitimate AdTech service activities as cover to carry out the fraudulent contracts scheme.  Waltz uses Helix as a vehicle to induce companies into entering contractual agreements that the Company does not have the ability or intention to fulfill and are signed on behalf of an entity that is completely unaffiliated with Waltz or Helix.  Helix and Waltz are able to evade liability under the contracts as a result of this scheme, or at least create a roadblock for parties seeking legal recourse.

85.     For example, on July 1, 2020 and July 23, 2020, RICO Defendant Waltz caused Helix to enter into the Insertion Order and MSA, respectively, with Plaintiff by directing co-president Tom Walsh to sign the agreements on behalf of Helix Digital Partners, LLC, the only entity incorporated in Delaware bearing that name, which is completely unaffiliated with Helix, Waltz, or the advertising industry in general.  Waltz directed Walsh to sign on behalf of Digital Partners so that in the event of default, Plaintiff would be misdirected and pursue an action against Digital Partners instead of Helix or fail to demonstrate privity between Plaintiff and Helix in a breach of contract action.

86.     As another example, on June 2, 2023, RICO Defendant Waltz caused Helix Digital, Inc. to enter into the Indebtedness Agreement after Helix defaulted on its obligations under the MSA by signing the agreements on behalf of Helix Digital Partners, LLC.  Waltz signed on behalf of Digital Partners so that in the event of default, which occurred after Helix ceased making payments to Plaintiff under the Repayment Plan, Plaintiff would be misdirected and pursue an action against Digital Partners instead of Helix, or fail to demonstrate privity between Plaintiff and Helix in a breach of contract action.

87.     RICO Defendant Waltz controls and directs the affairs of the Helix Digital, Inc. enterprise and uses the other executives of the enterprise as instrumentalities to carry out the fraudulent contracts scheme.  These practices include (i) designing a website that is deceptive due to misrepresenting the Company as Digital Partners instead of Helix Digital, Inc., (ii) inducing parties to enter business with Helix as Digital Partners, (iii) directing Helix executives to sign contracts on behalf of Digital Partners, (iv) directing executives to make misrepresentations regarding the Company's ability and willingness to fulfill its obligations under its agreements and to cease communication once the threat of litigation becomes imminent.

### d. The Predicate Acts

88.     RICO Defendant Waltz's scheme to enter contracts under the name of an unaffiliated entity, as described in the paragraphs incorporated by reference from above, was facilitated by the use of the U.S. mail and interstate wires in interstate commerce.

89.     As set forth in detail below, RICO Defendant Waltz's scheme constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), and as acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Waltz used the U.S. mail and interstate wires in violation of 18 U.S.C. §§ 1341 and 1343 in furtherance of his scheme to defraud Helix Digital, Inc.'s counterparties by using the fraudulent contracts scheme to escape liability upon default using false and/or fraudulent and misleading pretenses.

90.     RICO Defendant Waltz caused the enterprise to use the U.S. mail and interstate wires communicate false information about the Company to its counterparties, draft, and sign agreements with material misrepresentations about the name of the Company and the ability of its executives to sign on behalf of Digital Partners, accept payment for the services rendered by its counterparties under such fraudulent contracts, and communicate false and misleading information about the Company's ability to repay its debts.

91.     RICO Defendant Waltz induced Plaintiff to sign the agreements, including the Indebtedness Agreement, through U.S. mail and/or wires, phone, and in-person communications.

92.     On information and belief, the server used by Helix's website is not located in the state of New York and transmissions to and from this server cross state lines. As alleged above, Helix's server is located in New Jersey.

93.    Through the U.S. mail and interstate wires, Helix induced Plaintiff into a business relationship, sign fraudulent contracts, and make material misrepresentations and omissions about the Company's ability to fulfill its obligations under the Indebtedness Agreement.

94.    RICO Defendant Waltz's misrepresentations and omissions were material to Plaintiff.  Had Waltz disclosed that the correct name of the Company is Helix Digital, Inc., signed on behalf of Helix Digital, Inc., and accurately described the Company's ability and intention of fulfilling its obligations under the Indebtedness Agreement, Plaintiff would have files its Motion against the correct entity and received a judgment for the amount owed.  Each of these omissions and/or representations constituted an act of mail and/or wire fraud for purposes of 18 U.S.C. §§ 1341 and 1343.

95.    By using the U.S. mail to exchange hard copies of its fraudulent contracts, including the Indebtedness Agreement, and other communications representing the Company as Digital Partners, Waltz engaged in repeated acts of mail fraud in violation of 18 U.S.C. § 1341.

96.    Additionally, by using the internet, telephone, and facsimile transmissions to communicate false and misleading information about the fraudulent contracts scheme to its counterparties, creditors, and other potential business partners, Waltz engaged in repeated acts of wire fraud in violation of 18 U.S.C. § 1343.

97.    In pursuing his fraudulent contracts scheme, Waltz knowingly and fraudulently concealed and/or omitted material information from Plaintiff.

## COUNT II

### COMMON LAW FRAUD
### (AGAINST BOTH DEFENDANTS)

98.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99. Defendants Helix Digital, Inc. and its President/CEO James Waltz made material misrepresentations and concealed material facts concerning the Company including:

    a. Misrepresenting on the Company's website and contracts that the Company was registered and incorporated in Delaware as Helix Digital Partners, LLC when a different, unaffiliated company was registered in Delaware under that name;

    b. Failing to disclose that the Company's registered name is Helix Digital, Inc.;

    c. Misrepresenting that the contracts entered into with Plaintiff were between Plaintiff and Digital Partners instead of Helix Digital, Inc.;

    d. Misrepresenting the Company's ability and intention to continue fulfilling its obligations to Plaintiff under the Repayment Plan;

    e. Misrepresenting that Waltz and other Helix executives had authority to bind an entity known as Digital Partners to agreements with Plaintiff.

100. Defendants have a legal duty to act in good faith and fair dealing when entering into and performing its obligations under contract.

101. Defendants induced Plaintiffs to entered into and maintain a contractual relationship without disclosing any of the aforementioned material facts.

102. Defendants' material misrepresentations and omissions were willful and intentional and were committed to induce Plaintiff into entering a contractual relationship while enabling Defendant to escape liability upon default.

103. The information as to Defendants' registered Company name and its ability to fulfill its obligations under the Indebtedness Agreement was material to Plaintiff, yet Defendants misrepresented and concealed this information.

104. Defendants had a duty to disclose the material information they concealed because this information was known and accessible only to Defendants; Defendants has superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiff.

105.    Plaintiff was unaware of these misrepresented and omitted material facts and would not have agreed to enter into the Insertion Order, MSA, or Indebtedness Agreement if it had known these concealed and/or suppressed facts.

106.    Plaintiff reasonably relied on Defendants' misrepresentations and omissions.

107.    Defendants' fraud by misrepresentation and concealment caused damage to Plaintiff, which is entitled to damages and other legal and equitable relief as a result.

108.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being with the intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial but no less than the $1,132,927.05 owed to Plaintiff under the Indebtedness Agreement, plus interest.

## COUNT III

### FRAUDULENT CONCEALMENT
### (AGAINST BOTH DEFENDANTS)

109.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    Defendants Helix Digital, Inc. and its President/CEO James Waltz concealed material facts concerning the Company including:

    a.  Failing to disclose that the Company's registered name is Helix Digital, Inc. and not Helix Digital Partners, LLC;

    b.  Failing to disclose that there is another entity, completely unaffiliated with Defendants that is registered in Delaware as Helix Digital Partners, LLC;

    c.  Failing to disclose that the Company was unable or unwilling to fulfill its obligations under the Repayment Plan;

    d.  Failing to disclose that Waltz and other Helix executives were affiliates of Helix Digital, Inc. and did not have authority to sign on behalf of an entity named Helix Digital Partners, LLC.

111.    Defendants had legal duty to act in good faith and fair dealing when entering into and performing its obligations under contract.

112.    Defendants induced Plaintiffs to enter into and maintain a contractual relationship without disclosing any of the aforementioned material facts.

113.    Defendants' material omissions were willful and intentional and were committed simply to induce Plaintiff into entering a contractual relationship while enabling Defendant to escape liability upon default.

114.    The information as to Defendants' registered Company name and its ability to fulfill its obligations under the Indebtedness Agreement was material to Plaintiff, yet Defendants misrepresented and concealed this information.

115.    Defendants had a duty to disclose the material information they concealed because this information was known and accessible only to Defendants; Defendants has superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiff.

116.    Plaintiff was unaware of these omitted material facts and would not have agreed to enter into the Insertion Order, MSA, or Indebtedness Agreement if it had known these concealed and/or suppressed facts.

117.    Plaintiff reasonably relied on Defendants' omissions.

118.    Defendants' fraudulent concealment caused damage to Plaintiff, which is entitled to damages and other legal and equitable relief as a result.

119.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being with the intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial but no less than the $1,132,927.05 owed to Plaintiff under the Indebtedness Agreement, plus interest.

## COUNT IV

### NEGLIGENT MISREPRESENTATION
### (AGAINST BOTH DEFENDANTS)

120.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    Defendants Helix Digital, Inc. and its President/CEO James Waltz failed to disclose material facts concerning the Company including:

    a.  Failing to disclose that the Company's registered name is Helix Digital, Inc. and not Helix Digital Partners, LLC;

    b.  Failing to disclose that there is another entity, completely unaffiliated with Defendants that is registered in Delaware as Helix Digital Partners, LLC;

    c.  Failing to disclose that the Company was unable or unwilling to fulfill its obligations under the Repayment Plan;

    d.  Failing to disclose that Waltz and other Helix executives were affiliates of Helix Digital, Inc. and did not have authority to sign on behalf of an entity named Helix Digital Partners, LLC.

122.    Defendants had legal duty to act in good faith and fair dealing when entering into and performing its obligations under contract.

123.    Defendants induced Plaintiffs to enter into and maintain a contractual relationship without disclosing any of the aforementioned material facts.

32

124.    Defendants had a duty to disclose the material information they concealed because this information was known or should have been known and accessible only to Defendants; Defendants have superior knowledge and access to the facts; and Defendants knew or should have known the facts were not known to, or reasonably discoverable by Plaintiff.

125.    Plaintiff was unaware of these omitted material facts and would not have agreed to enter into the Insertion Order, MSA, or Indebtedness Agreement if it had known these concealed and/or suppressed facts.

126.    Defendants understand that companies like Plaintiff desire accurate and truthful information about its business partners and signatories to its contracts for a serious purpose, namely, having the ability to accurately pursue recourse against such counterparties in the event of default under such contracts.

127.    Plaintiff reasonably relied on Defendants' omissions.

128.    Defendants' negligent misrepresentation caused damage to Plaintiff, which is entitled to damages and other legal and equitable relief as a result.

129.    Therefore, Defendants are liable to Plaintiff for the damage it suffered as a result of Defendants' actions.

## COUNT V

### BREACH OF CONTRACT
### (AGAINST HELIX DIGITAL, INC.)

130.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

131.    Plaintiff entered into the Indebtedness Acknowledgement & Payment Plan Agreement with Helix Digital, Inc., conducting business under the Digital Partners name, on June

2, 2023.  The purpose of the contract was to memorialize the repayment plan of the Indebtedness amounts owed by Helix to Plaintiff (the "Repayment Plan").

132.    The Agreement provided that Helix acknowledges that as of May 2023, Helix owed to Plaintiff actual aggregate past due amounts totaling $1,544,270.16.

133.    The Repayment Plan set forth a fixed schedule wherein Helix would pay Amity in installments on specific dates beginning on May 22, 2023, until the debt was satisfied on September 15, 2025.  The Repayment Plan further provided that, between May 22, 2023, and November 15, 2023, Helix would pay Plaintiff a total of $825,585.68 in eight installments.

134.    Helix paid Plaintiff $50,000 on May 22, 2023, as set forth in the Repayment Plan schedule, and continued to make timely payments until September 15, 2023.

135.    As per the Repayment Plan, Helix was due to pay Plaintiff $285,646.15 on September 15, 2023, $189,477.00 on October 15, 2023, and $39,119.42 on November 15, 2023.

136.    On September 15, 2023, Helix missed its $285,646.15 payment due before ceasing all communications with Plaintiff.

137.    On October 17, 2023, Helix paid Plaintiff $50,000, an amount which does not satisfy either the September 15, 2023, or the October 15, 2023 payment amount due.

138.    On October 30, 2023, Helix paid Plaintiff another $50,000, which, even when added to the $50,000 payment made on October 17, 2023, still falls short of the full payment amount due on September 15, 2023 or October 15, 2023.

139.    Paragraph 4 of the Agreement provides that if Helix fails to make three consecutive timely payments pursuant to the Repayment Plan schedule, then Helix is deemed to be in default of the Agreement and Plaintiff shall have the right to pursue all permissible legal action, claims and remedies against Helix.

140.    Helix defaulted on the terms of the Agreement by failing to make three consecutive timely payments to Plaintiff between September 15, 2023, and November 15, 2023.

141.    Plaintiff notified Helix on several occasions that it would be at risk of breaching the Agreement, to which Helix responded that it would be able to cure the breach upon payment by an anonymous debtor and receipt of third-party investment funding before ceasing communications with Plaintiff.

142.    To date, Plaintiff has not been paid any portion of the remaining $1,132,927.05.

143.    Helix's breach caused damage to Plaintiff, which is entitled to damages and other legal relief as a result.

144.    Therefore, Helix is liable to Plaintiff for the damage it suffered as a result of Helix's actions in an amount no less than the $1,132,927.05 balance owed to Plaintiff under the Indebtedness Agreement, plus interest.

## COUNT VI

**UNJUST ENRICHMENT**
**(AGAINST BOTH DEFENDANTS)**

145.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

146.    Plaintiff would not have agreed to enter into the Insertion Order, MSA, or Indebtedness Agreement with Defendant Helix if it had known about Defendants' fraudulent and misleading business practices.

147.    By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit beyond what was contemplated by the parties at Plaintiff's expense.

148.    It would be unjust and inequitable for Defendants to retain the $1,132.927.05 balance, plus interest, owed to Plaintiff under the Indebtedness Agreement that Waltz deceptively and misleadingly signed under the Digital Partners name instead of the correct entity name.

149.    Therefore, Defendants are liable to Plaintiff for the damages it has suffered as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Find that Defendants Helix Digital, Inc. and James Waltz committed all the violations of law as alleged herein;

b.  Render an award of compensatory damages of at least $1,132,927.05, the precise amount of which is to be determined at trial;

c.  Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

d.  Declare that Defendants have committed the violations of law alleged herein;

e.  Render an award of punitive and/or treble damages;

f.  Enter judgment including interest, costs, reasonable attorneys' fees, expenses; and

g.  Grant all other such relief as the Court deems appropriate.

Dated:  New York, New York
        December 20, 2023

DAVIDOFF HUTCHER & CITRON LLP

By:_____
        William H. Mack, Esq. (WM-7786)
        605 Third Avenue
        New York, New York 10158
        (212) 557-7200
        *Attorneys for Plaintiff*