**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMITY DIGITAL LLC,

                              Plaintiff,

    *~ against ~*

HELIX DIGITAL INC. and JAMES WALTZ,

                            Defendants.

Case No. 1:23-cv-11-44-VSB

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE AND MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

**DAVIDOFF HUTCHER & CITRON LLP**
605 THIRD AVENUE, 34TH FL.
NEW YORK, NEW YORK 10158

*ATTORNEYS FOR PLAINTIFF AMITY DIGITAL LLC*

1003832v.2

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS.....................................................................................................2

    A.    The Fraudulent Scheme ..............................................................................................2

    B.    The First Default Judgment Hearing...........................................................................4

    C.    The Second Default Judgment Hearing ......................................................................6

ARGUMENT ..........................................................................................................................7

    I.    THIS COURT HAS SUBJECT MATTER JURISDICTION.......................................7

    II.    THIS COURT SHOULD NOT VACATE THE DEFAULT JUDGMENT .................9

        A.    Legal Standard ................................................................................................10

        B.    Helix's Default Was Willful ..........................................................................10

        C.    Helix Does Not Present a Meritorious Defense.............................................13

        D.    Setting Aside the Default Would Prejudice Amity.........................................14

    III.    AMITY HAS SUFFICIENTLY PLED A CIVIL RICO CLAIM AND THEREFORE, THE CLAIM SHOULD NOT BE DISMISSED ..........................................................15

        A.    Legal Standard.................................................................................................15

        B.    Amity Has Sufficiently Alleged a Pattern of Racketeering Activity ....................16

        C.    Amity Sufficiently Alleges Proximate Cause .......................................................21

    IV.    DEFENDANTS SHOULD BE SANCTIONED PURSUANT TO RULE 11 AND THE COURT'S DISCRETION ..................................................................................................23

    V.    IN THE ALTERNATIVE, THE COURT SHOULD ONLY DISMISS THE COMPLAINT WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD........25

CONCLUSION ....................................................................................................................25

1003832v.2

# TABLE OF AUTHORITIES

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016) ................................................................................ 24

*American Alliance*, 92 F.3d at 61, citing *Schwarz v. United States*,
384 F.2d 833 (2d Cir. 1967) .............................................................................................. 11

*Bayerische Landesbank New York Branch v. Aladdin Capital Management LLC*,
692 F.3d 42 (2d Cir. 2012) .................................................................................................. 8

*Canedy v. Liberty Mutual Ins. Co.*,
126 F.3d 100 (2d Cir. 1997) ................................................................................................ 9

*Cho v. Osaka Zen Spa*,
No. 19-CV-7935 (ER), 2023 WL 5003570 (S.D.N.Y. Aug. 4, 2023) .............................. 11, 14

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
187 F.3d 229 (2d Cir. 1999) .............................................................................................. 16

*Cohen v. Koenig*,
25 F.3d 1168 (2d Cir. 1994) .............................................................................................. 19

*Davis v. Musler*,
713 F.2d 907 (2d Cir. 1983) .............................................................................................. 10

*Drywall Tapers & Pointers of Greater New York Loc. Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*,
343 F.R.D. 358 (S.D.N.Y. 2022) ....................................................................................... 11

*Empire Merchants, LLC v. Reliable Churchill LLP*,
902 F.3d 132 (2d Cir. 2018) .............................................................................................. 23

*Energium Health v. Gabali*,
No. 3:21-CV-2951-S, 2023 WL6392631 (N.D. Tex. Sep. 29, 2023) ................................. 20, 21

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993) ..................................................................................... 10, 13, 14

*Entretelas Americanas S.A. v. Soler*,
No. 19CIV03658LAKRWL, 2020 WL 9815186, at *7 (S.D.N.Y. Feb. 3, 2020) ................... 16

*Gambello v. Time Warner Commc'ns, Inc.*,
186 F. Supp. 2d 209 (E.D.N.Y. 2002) .............................................................................. 23, 24

1003832v.2

*Gutierrez v. Fox*,
  141 F.3d 425 (2d Cir. 1998).............................................................................................. 23

*In re Cacciatore*,
  No. CV-97-4654 (ERK), 1998 WL 412644, at *1 (E.D.N.Y. July 21, 1998).......................... 19

*Jacobs v. Patent Enforcement Fund, Inc.*,
  230 F.3d 565 (2d Cir. 2000)................................................................................................ 8

*Javier H. v. Garcia-Botello*,
  239 F.R.D. 342 (W.D.N.Y. 2006)....................................................................................... 25

*Kochisarli v. Tenoso*,
  No. 02-CV-4320-DRH-MLO, 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006) ................. 23

*Lincoln Ben. Life Co. v. AEI Live, LLC*,
  800 F.3d 99 (3d Cir. 2015)................................................................................................. 8

*Mayes v. 490 Habitat, Inc.*,
  No. 18-CV-1427(SJF), 2020 WL 587112, at *4 (E.D.N.Y. Feb. 6, 2020) ............................ 25

*Moore v. PaineWebber, Inc.*,
  189 F.3d 165 (2d Cir. 1999)............................................................................................... 17

*New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
  432 Fed. Appx. 25, 25 (2d Cir. 2011) ................................................................................. 24

*Peterson v. Syracuse Police Dep't*,
  467 Fed. Appx. 31(2d Cir. 2012). ....................................................................................... 10

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
  75 F.3d 801 (2d Cir. 1996)................................................................................................. 18

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
  No. 03-CV-1851-NGG, 2007 WL 1026411, at *2 (E.D.N.Y. Mar. 30, 2007) ....................... 24

*Sedima, S.P.R.I. v. Imrex Co.*,
  473 U.S. 479 (1985) .......................................................................................................... 15

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)............................................................................................... 18

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004)............................................................................................ 3, 14

*Toohey v. Portfolio Recovery Associates, LLC*,
  No. 15 Civ. 8098, 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016)............................... 23

iii

*UBS Sec. LLC v. Dondero*,
  No. 23 CIV. 1965 (KPF), 2023 WL 8472322, at *5 (S.D.N.Y. Dec. 7, 2023) ........................... 9

**Statutes**

18 U.S.C. § 1961 ................................................................................................................... 9, 16

18 U.S.C. § 1962(c) ......................................................................................................... 4, 15, 23

18 U.S.C. §§ 1341 and 1343 ................................................................................................... 16

28 U.S.C. § 1331 ...................................................................................................................... 9

28 U.S.C. § 1367 ...................................................................................................................... 9

28 U.S.C. § 1653 .................................................................................................................... 25

**Rules**

Fed. R. Civ. P. Rule 9(b) ................................................................................................ passim
Fed. R. Civ. P. Rule 11 ................................................................................................... passim
Fed. R. Civ. P. Rule 55(c) ................................................................................. 10, 11, 12, 14
Fed. R. Civ. P. Rule 60(b) ........................................................................................... 10, 11

iv

**PRELIMINARY STATEMENT**

Plaintiff AMITY DIGITAL LLC ("Amity" or "Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' HELIX DIGITAL INC. ("Helix") and JAMES WALTZ ("Waltz") motion to vacate the default judgment entered against Helix on February 29, 2024, dismiss the Complaint for lack of subject matter jurisdiction, and dismiss the civil RICO claims against Waltz. This memorandum is further submitted in support of Plaintiff's cross motion for Rule 11 sanctions against Defendants and their counsel for submitting demonstrably false sworn statements, and thus perpetuating a fraud upon the Court.

The Court should not vacate the default judgment properly entered against Helix because Helix's default was overtly willful and strategic. In fact, Helix made the tactical decision to default and agreed with entry of default *on the record* in a proceeding before this Court. When Helix later had second thoughts about this decision, it attempted to undo its prior statements by – in utter bad faith – making demonstrably false statements in Waltz's Declaration in support of Defendants' Motion (the "Waltz Declaration"). Moreover, at no point has Helix presented *any* defense to the claims asserted against it, let alone a meritorious one. And finally, after months of willful and contumacious conduct on behalf of Defendants – who have consistently sought to game the system at every turn to create delay and inefficiency – granting the requested relief would decidedly prejudice Amity.

Defendants' jurisdictional arguments fare no better. This Court has jurisdiction because complete diversity between the parties is alleged on the face of the Complaint. To the extent that Defendants complain that the individual citizenship of the members of the Plaintiff LLC are not alleged, Plaintiffs herewith supply a declaration indicating that the Plaintiff LLC's sole member is

1

a New York citizen. In addition, the civil RICO claim asserted against Waltz provides an independent basis for federal question jurisdiction over all related claims against Waltz and Helix.

Furthermore, civil RICO is adequately pled because the Complaint identifies at least two predicate acts based upon the use of mails and wires in furtherance of the racketeering scheme. The Complaint also alleges facts giving rise to a strong inference of fraudulent intent, numerous material misrepresentations, and allegations of proximate cause. Thus, the Rule 9(b) pleading standard is amply met.

Accordingly, and as more fully stated below, the Court should deny Defendants' motion in all respects, and impose Rule 11 sanctions upon Defendants and their counsel for offering demonstrably false statements in the Waltz Declaration.

<u>**STATEMENT OF FACTS**</u>

This action arises out of a fraud perpetuated by an advertising technology ("AdTech") company, Helix Digital, Inc. ("Helix"), and its Chief Executive Officer James Waltz. For years, Defendants have deployed a scheme to deceive Plaintiff (and numerous other businesses) into entering business deals which resulted in little to no payoff for these companies. Under Defendants' scheme, Plaintiff and other similarly situated businesses are then faced with difficulty in recouping their losses due to Defendants' repeated and deliberate execution of operative documents in the name of an innocent bystander company bearing no relation to Defendants.

**A. The Fraudulent Scheme**

The Defendants' deceptive scheme works as follows. Helix fraudulently presents itself as Helix Digital Partners, LLC ("Digital Partners"). They purport to operate an AdTech company incorporated in Delaware under that name, which they claim provides video distribution, publisher monetization, and other advertising services to its clients. Under the "Digital Partners" name, Helix induces counterparties (such as Plaintiff) to enter a business relationship, and its agents even

2

1003832v.2

sign multiple agreements ostensibly on behalf of Digital Partners instead of Helix Digital, Inc. After Helix defaults on its obligations under such agreements, its counterparties and creditors find difficulty obtaining legal recourse because Helix deliberately misidentifies itself in the operative documents (as well as on its website and other company documents) as Digital Partners. Digital Partners is a completely separate entity, also organized in Delaware, with which Defendants have no relationship. Once Defendants default on their obligations, their counterparties are apt to pursue legal recourse against the only Helix Digital Partners, LLC incorporated in Delaware, a hydroelectric power company that no longer does business under the Digital Partners name and has no affiliation with Waltz or Helix Digital Inc.

Beginning in or about July 2020, Plaintiff entered into a series of agreements, an Insertion Order, Master Services Agreement ("MSA"), and Indebtedness Acknowledgement and Payment Plan Agreement ("Indebtedness Agreement") with Helix, but under the Digital Partners name. These documents were signed by Waltz and Thomas Walsh ("Walsh") in their purported capacities as CEO and co-presidents of Digital Partners. After Helix defaulted on its obligations to Plaintiff under the Indebtedness Agreement by ceasing to make payments pursuant to the Agreement's payment schedule, Plaintiff pursued recourse by filing a Motion for Summary Judgment in Lieu of Complaint against Digital Partners in the New York State Supreme Court, using the information available on the Delaware Secretary of State's entity directory to find the address of its registered agent. Shortly thereafter, Plaintiff was contacted by Nick Ivancic ("Ivancic"), general counsel for Eagle Creek Renewable Energy, LLC ("Eagle Creek"), who notified Plaintiff that the Digital Partners entity it served is an affiliate of Eagle Creek and had never done business with Plaintiff or Waltz. Ivancic then informed Plaintiff that it received similar communications from other AdTech industry entities demanding payment from Digital Partners for a sum owed.

3

Plaintiff commenced this action against Helix and Waltz on December 20, 2023, by filing the summons and complaint, alleging a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), against Waltz; common law fraud, fraudulent concealment, and negligent misrepresentation against both Defendants; and breach of contract against Helix.  A copy of the summons and complaint was served on the Defendants on December 27, 2023 at 11:18 a.m. at 4 Circle Drive, Rumson, New Jersey 07760 by personal service on Karen Waltz, who is authorized to accept service on behalf of both defendants, and Amity filed proof of service on the docket.  The Defendants failed to respond to the Complaint.

## B.  The First Default Judgment Hearing

On January 24, 2024, Amity filed an Order to Show Cause seeking a default judgment against both Defendants based upon the Defendants' failure to answer, appear, or otherwise respond to the Complaint.  (Dkt. Nos. 13-16.)  On January 25, 2024, The Honorable Vernon S. Broderick ordered the parties to appear before this Court via teleconference on February 29, 2024 at 4:00 p.m. (the "Hearing") and show cause as to why an order should not be issued pursuant to Rule 55(a) of the Federal Rules of Civil Procedure entering judgment of default against Defendants.  (Dkt. No. 17.)  Pursuant to this Court's Order, Amity and Waltz, the latter appearing *pro se*, appeared before this Court during the February 29 Hearing.  During the Hearing, the court informed Waltz that while he was permitted to appear *pro se* on behalf of himself in the proceeding, he was required by federal law to retain counsel for Helix if he intended to defend the claims against the Company.  *See* Feb. 29, 2024 Hearing Tr. at 3:2-14.  The Court then asked Waltz ***twice*** if he intended to defend the claims against Helix, to which Waltz unequivocally responded that he would not.  *See* Declaration of William Mack ("Mack Declaration"), Exhibit B, Feb. 29, 2024 Hearing Tr. at 3:2-14; 5:14-20 (hereinafter referred to as the "Feb. 29 Hearing Tr.")  The Court

4

then proceeded to enter default against Helix, which the Court stated three times on the record. *See* Feb. 29, 2024 Hearing Tr. at 5:25, 6:1-3; 7:8-12; 7:22-25.

At the close of the February 29 Hearing, the Court ordered the parties to meet and confer to determine whether a stipulation of judgment regarding Helix's liability can be reached, holding in abeyance an inquest on damages. *See* Mack Decl. ¶ 6. The Court instructed Waltz to contact the Court's *Pro Se* Office and formalize his appearance on the docket, an instruction memorialized in the Court's March 1, 2024 Order (the "March 1 Order"). (Dkt. No. 20.) During the Hearing, the undersigned counsel for Amity provided Waltz with his telephone and email contact information, but Waltz declined to do the same. *See* Mack Decl. ¶ 7. Instead, Waltz represented that he would contact Amity's counsel. *See* Feb. 29, 2024 Hearing Tr. at 9:15-25.

On March 12, 2024, nearly two weeks after the Hearing, Waltz had yet to contact Amity or its counsel. *See* Mack Decl. ¶ 8. The undersigned counsel, in a demonstration of good faith, undertook a public records search that same day and found three email addresses associated with Waltz. *See* Mack Decl. ¶ 9. Amity's counsel proceeded to write to each of those three email addresses and concurrently sent a letter via overnight courier to Waltz's Rumson, New Jersey address, requesting that he contact Amity. *See* Mack Decl. ¶ 9. Waltz did not respond to any of these attempts at contact. *See* Mack Decl. ¶ 10.

Pursuant to this Court's March 1 Order, Amity's counsel wrote a letter to the Court on March 14, 2024, informing the Court that Amity was unable to meet and confer with Waltz due to his failure to communicate with Amity or its counsel in any way. (Dkt. No. 21.) Additionally, Waltz failed to comply with this Court's instructions to file his appearance on the docket.

On March 17, 2024, this Court issued another Order once again directing Waltz to contact the Court's *Pro Se* Office by April 1, 2024 to file his appearance on the docket, and that "[i]f Mr.

1003832v.2

Waltz fails to comply with this Order, [this Court] may enter default judgment against him." (Dkt. No. 22.)  The March 17 Order further directed Amity to file a status update on April 3, 2024, proposing next steps in this case, to serve a copy of the March 17 Order on Waltz by March 20, 2024, and to file proof of service on the docket by March 22, 2024.  (Dkt. No. 22.)  Amity served a copy of the March 17 Order on Waltz at his Rumson, New Jersey address on March 19, 2024 (Mack Decl. ¶ 12) which was accepted by Karen Waltz, and filed an affidavit of service on the docket on March 20, 2024.  (Dkt. No. 23.)

### C.  The Second Default Judgment Hearing

On April 8, 2024, the Court directed Amity to file a ***second*** proposed order to show cause for a default judgment against Waltz (since a default judgment had already been entered against Helix), and a second default judgment hearing was held on May 2, 2024 (the "May 2 Hearing"). Despite failing to comply with any of the Court's orders following the February 29 Hearing, Waltz appeared at the May 2 Hearing *pro se*.

When the Court asked Waltz why he had not complied with any of the Court's Orders, Waltz responded that he "lost track of timing" because he was not served with the Court's February 29 Order properly, despite the fact that Amity served all of the Court's orders onto Waltz's Rumson, New Jersey address, where service had previously been accepted, and he was present at the February 29 Hearing when the order was first entered.  (Dkt. Nos. 18-19, 23, 34.)  *See* Mack Decl., Exhibit C, May 2, 2024 Hearing Tr. at 8:11-15 (hereinafter referred to as the "May 2, 2024 Hearing Tr.")  When the Court asked why it should not enter default against Waltz due to his noncompliance, Waltz responded as follows:

> Again, I have been attempting various (Inaudible) to reestablish a business that is
> at this point essentially not able to make it and may end up in solvency, which of
> course, again, would not help the plaintiff any longer either. And in due course I
> hope that we can continue to move forward with (Inaudible) to rebuild it. It's been

6

a painstaking effort to do so. It has taken a lot of my time and effort and resources to do that.

*See* May 2, 2024 Hearing Tr. at 8:3-10.

Despite Waltz's argument that he essentially was too busy to comply with the Court's Orders, the Court still agreed to give Waltz one final chance to avoid default against him personally on the condition that he formalize his appearance on the docket and contact Amity's counsel to begin discussions regarding Helix's liability by the close of business on May 3, 2024.

The parties did not engage in substantive discussions regarding Helix's liability due in part to the fact that Waltz canceled the parties' scheduled, in-person meeting on the morning that it was scheduled to take place (Mack Decl. ¶ 15), but Waltz otherwise complied with the Court's Order. Amity's counsel then wrote to the Court on May 6, 2024, informing the Court that the parties had agreed that Waltz would respond to the Complaint by May 17, 2024, and requesting that this deadline be So Ordered. (Dkt. No. 37.) Waltz then proceeded to retain counsel to represent himself and Helix, which then filed this instant motion.

## ARGUMENT

### I.     THIS COURT HAS SUBJECT MATTER JURISDICTION

Defendants' jurisdictional arguments lack any merit and should be discarded. 28 U.S.C. § 1332 provides that the district courts have original jurisdiction of all civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. The Complaint alleges both. As for diversity, the Complaint alleges that Plaintiff is organized under New York law and is situated in New York (Compl. ¶ 11), and that Defendants Waltz and Helix are located in New Jersey and Delaware, respectively (Compl. ¶¶ 12, 13). In addition, the Complaint alleges that the amount in controversy exceeds $75,000. Compl., "Prayer for Relief," ¶ b (seeking an award of compensatory damages of at least $1,132,927.05). To supplement and

1003832v.2

further clarify these allegations, Plaintiff herewith submits the Declaration of Stephen Magli ("Magli") (such declaration, the "Magli Declaration"), indicating that the sole member of Amity Digital LLC is another LLC called AiDigital HoldCo, LLC.  The sole member of *that* LLC, in turn, is an s-corporation called AiDigital New Corporation, which is organized under the laws of the state of New York, and which is located in New York.   *See* Magli Decl. ¶ 2.  Therefore, this Court plainly has diversity jurisdiction over this action because Plaintiff's sole member is another LLC whose sole member is a New York Corporation.  Indeed, it is well-established that, for diversity purposes, an LLC takes the citizenship of its members.  *See Bayerische Landesbank New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *see also Lincoln Ben. Life Co. v. AEI Live, LLC*, 800 F.3d 99 (3d Cir. 2015) ("citizenship of an LLC is determined by the citizenship of its members.  For complete diversity to exist, all of the LLC's members must be diverse from all parties on the opposing side.") (quotations omitted).

The fact that Plaintiff's member's citizenship was not alleged in the Complaint does not warrant dismissal, for "the actual existence of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements."  *See Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 (2d Cir. 2000) (default judgment issued on failure to answer complaint not void for lack of jurisdiction where plaintiffs failed to allege the citizenship of the parties where it had been established through plaintiff's response to defendant's motion to vacate and supporting affidavits that complete diversity existed at the time of the initial pleadings).  Furthermore, when the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, the Court may deem the pleadings amended so as to properly allege diversity jurisdiction.  *See Canedy v. Liberty Mutual Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) (complete diversity established in light of affidavits regarding the

8

plaintiff's domicile and defendant's state of incorporation), citing *Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399-400 (1925).

Here, the allegations of the Complaint coupled with the Magli Declaration establish diversity jurisdiction. *See Realty Holding Co.*, 268 U.S. at 399-400.

This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the federal RICO statute, 18 U.S.C. § 1961 *et seq*. The fact that Helix is not named as a RICO defendant does not prevent this Court from exercising supplemental jurisdiction over Helix under 28 U.S.C. § 1367, which affords the district courts with jurisdiction over all the other claims related to the federal claim such that they form part of the same case or controversy. Such supplemental jurisdiction includes claims that involve the joinder or intervention of additional parties. *See* 28 U.S.C. § 1367(a). The claims pleaded against Helix, which include common law fraud, fraudulent concealment, negligent misrepresentation, breach of contract, and unjust enrichment, are all related to the fraudulent scheme perpetuated by Waltz to evade Helix's contractual obligations. *See UBS Sec. LLC v. Dondero*, No. 23 CIV. 1965 (KPF), 2023 WL 8472322, at *5 (S.D.N.Y. Dec. 7, 2023) (exercising supplemental jurisdiction over plaintiff's turnover claims predicated on fraudulent conveyance and alter ego theories grounded in state law because such claims arose out of the same common nucleus of operative facts as federal RICO claims and the RICO claims extensively incorporate by reference the underlying state law claims). Accordingly, this court has supplemental jurisdiction over the state law claims pleaded against Helix.

For the foregoing reasons, Plaintiff's Complaint should not be dismissed for lack of subject matter jurisdiction.

## II.     THIS COURT SHOULD NOT VACATE THE DEFAULT JUDGMENT

9

1003832v.2

### A.  Legal Standard

Rule 55(c) provides that the court may only set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).  *See* Fed. R. Civ. P. 55(c).  The Second Circuit has interpreted Rule 55(c) to mean that a party "may move pursuant to Rule 55(c) to set aside an entry of default for 'good cause' ***or*** to set aside a default judgment in accordance with Rule 60(b)."  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (emphasis added).

While Rule 55(c) does not define "good cause," the Second Circuit has instructed district courts to consider three criteria in deciding a Rule 55(c) motion: (i) whether the default was willful; (ii) whether setting aside the default would prejudice the party for whom default was awarded; and (iii) whether the moving party has presented a meritorious defense.  *See Peterson v. Syracuse Police Dep't*, 467 Fed. Appx. 31, 33 (2d Cir. 2012).

In the alternative to finding good cause under Rule 55(c), Rule 60(b) provides that a court may relieve a party or its legal representative from a final judgment, order, or proceeding for certain reasons, including "mistake, inadvertence, surprise, or excusable neglect."  *See* Fed. R. Civ. P. 60(b).  The same criteria used to determine whether there is "good cause" to vacate a judgment under Rule 55(c) are used by courts to determine whether default judgment may be set aside under Rule 60(b).  *See Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983).

Here, each of the pertinent factors weighs against vacatur.

### B.  Helix's Default Was Willful

Defendants have not shown good cause for vacating the default judgment entered against Helix pursuant to the criteria enumerated in *Peterson*.  First, Helix's default was willful.  In the context of default judgment, willfulness amounts to conduct that is egregious or deliberate, such

10

1003832v.2

as where a defaulting defendant made a strategic decision to default. *See Drywall Tapers & Pointers of Greater New York Loc. Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*, 343 F.R.D. 358, 364 (S.D.N.Y. 2022); *see also American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996) ("we have refused to vacate a judgment where the moving party had apparently made a strategic decision to default"). Deliberately evasive conduct, even if not in bad faith, also amounts to more than mere negligence for the purposes of vacating a judgment under Rule 55(c) and 60(b). *See Cho v. Osaka Zen Spa*, No. 19-CV-7935 (ER), 2023 WL 5003570, at *5 (S.D.N.Y. Aug. 4, 2023).

A party can readily be found culpable under the more stringent, bad faith construction of the willfulness standard where counsel, or as in this case, the party appearing *pro se*, ignores their responsibility to the court, such as by waiting until the eve of trial to inform the Court that he would be unavailable to try the case the next day. *See American Alliance*, 92 F.3d at 61, citing *Schwarz v. United States*, 384 F.2d 833, 835-36 (2d Cir. 1967).

Helix made a strategic decision to default in this instant action, through the action of its CEO, Defendant James Waltz. Contrary to Waltz's false assertions in his Declaration in support of Helix's Motion to Vacate Default Judgment (the "Waltz Declaration"), Waltz was ***not*** unaware that the Court had entered a default judgment against Helix until advised by counsel. In fact, Waltz was present at the February 29 Hearing, when the Court entered default against Helix. During the February 29 Hearing, the Hon. Vernon S. Broderick announced ***three times*** – in terms that could not have been clearer – that the court was entering default against Helix and ordered the parties to meet and confer to determine whether a stipulation of judgment regarding Helix's liability could be reached. Specifically, the court stated the following during the February 29 Hearing:

11

The Court: "Okay, so my concern I have, counsel and Mr. Waltz, is that you know, granting the default as to the company – well what I will do is grant the default against the company as to liability." Feb. 29, 2024 Hearing Tr. at 5:25, 6:1-3.

The Court: "As I said, I'm going to enter default against the company as to liability. The issue of damages – because my understanding is the issue of damages sought are not only whatever the debt is, its attorneys' fees and also treble damages." Feb. 29, 2024 Hearing Tr. at 7:8-12.

The Court: "So I guess what I would say is that I will enter a default judgment with regard to the company. I'll hold in abeyance the issue of a referral at this stage for an inquest." Feb. 29, 2024 Hearing Tr. at 7:22-25.

Not only did Waltz receive actual notice of the default, but the transcript also reveals that Waltz affirmatively *consented* to the entry of default against Helix. The transcript provides:

The Court: "With regard to Helix Digital, Mr. Waltz, what is your intention with regard to Helix Digital? Are you going to get a lawyer for Helix Digital, or - "

Mr. Waltz: "Unlikely, I think at this point, I won't interfere with the process you've begun to get a default judgment against the trade debt owed originally to Amity from the Helix Digital business, in principle, and as per contract."

Feb. 29, 2024 Hearing Tr. at 5:14-20.

Thus, Helix's CEO made a tactical decision to default. The record demonstrates that the Court gave Helix every opportunity to avoid default at the February 29 Hearing, which Helix declined. The record further disproves Waltz's false assertions in his sworn declaration that: (i) he was under the mistaken belief that Plaintiff had not properly served Helix because he thought that, as a Delaware corporation, it needed to be served through its registered agent in Delaware; *see* Waltz. Decl. ¶ 6; and (ii) he did not understand that an appearance on behalf of Helix was required in addition to his own *pro se* appearance. *See* Waltz Decl. ¶ 8. Indeed, the Court not only informed Waltz that Helix has to be represented by counsel but, prior to entering default, asked Waltz twice if he intended to defend the case against Helix. Specifically, the transcript provides:

12

> <u>The Court</u>: "So you, as an individual, can represent yourself, but Helix Digital, Inc., under federal law, has to be represented by counsel and you can't represent yourself and the company.
>
> Right now, the plaintiff has a certificate of default, which was issued by the court, by the clerk's office, when a party doesn't answer a complaint or otherwise respond by filing a motion.
>
> So let me ask, what is your intention? Do you intend to defend this case?"
>
> <u>Mr. Waltz</u>: "Well, as far as the Helix Digital trade debt that is the original amount that was alleged, certainly can be stipulated that it is owed . . ."

Feb. 29, 2024 Hearing Tr. at 3:2-14.

By including false statements in his declaration in support of the motion to vacate, Waltz and Helix have engaged in egregious conduct that further weighs against vacating the default judgment. *See* Waltz Decl. ¶¶ 4, 6, 8. Such conduct also includes Defendants' deliberately evasive behavior throughout this litigation. Not only did Defendants fail to answer the Complaint, but Waltz, in his personal capacity and as Helix's CEO, has consistently ignored this Court's orders by failing to contact the *pro se* office and file an appearance on the docket until after the *second* default hearing on May 2, 2024, and by failing to meet and confer with Amity's counsel to discuss Helix's liability within the time specified by this Court's March 17, 2024 Order. (Dkt. No. 22.)

### C. Helix Does Not Present a Meritorious Defense

A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. *See Enron*, 10 F.3d at 98. Whether a defense is meritorious under Rule 55(c) or 60(b) for the purposes of vacating a judgment "is measured not by whether there is a likelihood that [the defense] will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *See id.* This standard applies regardless of whether there has been an evidentiary hearing or an opportunity for discovery. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004).

13

1003832v.2

Helix fails to offer *any* defense to the claims against it, much less a meritorious one. Aside from Helix's misguided argument that the default judgment is somehow void for lack of jurisdiction, Helix's sole reasons for seeking to vacate the judgment are that Amity demands a substantial sum of money from Helix and that Helix's default was based upon Waltz's mistaken belief that a Delaware corporation could only be served through its registered agent in Delaware. Helix's failure to offer a meritorious defense (or indeed *any* defense) is alone sufficient to support the court's denial of Defendants' Motion to Vacate. *See State St. Bank*, 374 F.3d at 174.

### D.  Setting Aside the Default Would Prejudice Amity

In considering whether a plaintiff would be prejudiced if a default judgment were vacated, the Court considers more than mere delay or passage of time. *See Enron*, 10 F.3d at 98. A plaintiff may demonstrate prejudice by showing that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *See Cho*, No. 19-CV-7935 (ER), 2023 WL 5003570, at \*6. Prejudice may also be present if vacatur would thwart the plaintiff's recovery or remedy. *See id.* To meet this standard, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated. *See id.*

Amity has expended a significant amount of time and resources prosecuting the claims against Helix. Not only did Helix's and Waltz's scheme mislead Amity into wasting time and resources filing a lawsuit against an unaffiliated entity, it was forced to file two show cause orders for default, and repeatedly attempted in vain to contact Mr. Waltz in order to make a determination as to Helix's liability, as ordered by this Court on March 1, 2024. (Dkt. No. 20.) Based on Waltz's record of evading court orders and deadlines, as well as the dishonesty that was displayed before

14

this Court in the Waltz Declaration, such conduct indicates that vacating the default judgment would likely create significant and costly delays during discovery.

Vacatur would also thwart Amity's remedy against Helix because Amity's claims against Helix have has already been awarded to Amity with the express consent of Waltz. During the February 29 Hearing, the Court ordered the parties to meet and confer regarding damages owed by Helix to Amity. Waltz agreed that Amity was owed a debt by Helix. *See* Feb. 29, 2024 Hearing Tr. at 5:14-20 (Mr. Waltz: "I won't interfere with the process you've begun to get a default judgment against the trade debt owed originally to Amity from the Helix Digital business, in principle, and as per contract"). The Court ordered Waltz to contact Amity and begin discussions regarding Helix's liability a second time during the May 2 Hearing, and Waltz indeed called Amity's counsel and arranged for an in-person meeting (unsurprisingly, however, Waltz canceled the meeting on its scheduled day). *See* Mack Decl. ¶15-16. Vacating the judgment would unreasonably further delay Amity's recovery of the debt owed to it, which is uncontested.

Thus, each of the three pertinent factors weigh decidedly against vacatur. Thus, the default judgment against Helix must stand.

### III.  AMITY HAS SUFFICIENTLY PLED A CIVIL RICO CLAIM AND THEREFORE, THE CLAIM SHOULD NOT BE DISMISSED

#### A.  Legal Standard

Waltz's application to dismiss the RICO claim should be rejected because a civil RICO cause of action has been sufficiently alleged in the complaint. To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" includes mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. *See* 18 U.S.C. § 1961.

15

To state a RICO claim, a plaintiff must allege (1) at least two predicate acts of racketeering occurring withing a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to or pose a threat to continued racketeering activity. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999). A RICO complaint alleging mail and wire fraud as predicate acts must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Entretelas Americanas S.A. v. Soler*, No. 19CIV03658LAKRWL, 2020 WL 9815186, at *7 (S.D.N.Y. Feb. 3, 2020), citing *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).

**B. Amity Has Sufficiently Alleged a Pattern of Racketeering Activity**

Contrary to Defendants' assertions, Amity sufficiently alleges a pattern of racketeering activity in accordance with the pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b). First, the Complaint is replete with specific examples of mailings and wires used to perpetuate Waltz's fraudulent scheme. *See* Compl. ¶¶ 89-96. For example, Paragraph 90 of the Complaint alleges the following:

> RICO Defendant Waltz caused the enterprise to use the U.S. mail and interstate wires to communicate false information about the Company to its counterparties, draft, and sign agreements with material misrepresentations about the name of the Company and the ability of its executives to sign on behalf of Digital Partners, accept payment for the services rendered by its counterparties under such fraudulent contracts, and communicate false and misleading information about the Company's ability to repay its debts.

Compl. ¶ 90.

Second, the Complaint alleges at least two predicate acts of fraud committed by Waltz. Paragraphs 54 and 96 of the Complaint expressly state that Waltz has committed fraud against at least one other party, specifically an entity named Trendesk.TV LLC d/b/a Bidfuse:

16

Ivancic further informed Plaintiff that Digital Partners received similar inquiries and demands to that of Plaintiff's. Ivancic then sent Plaintiff a demand letter it received on November 7, 2023 from counsel for an entity named Trendesk.TV LLC d/b/a Bidfuse ("Bidfuse"), demanding payment of a sum of $235,456.00 purportedly owed by Digital Partners. Ivancic asserted that neither Digital Partners nor Eagle Creek had any affiliation with Bidfuse.

Compl. ¶ 54.

The Complaint further alleges that Waltz committed at least two predicate acts against Amity. Namely, it is alleged that Waltz made at least three false statements against Amity by conducting and participating in the affairs of the Helix Digital Inc. enterprise by executing at least three binding agreements on behalf of an entity that they did not control: (i) the Insertion Order, (ii) the MSA, and (iii) the Indebtedness Agreement and Repayment Plan. In signing these documents, Waltz falsely and fraudulently represented that he was signing and was authorized to sign on behalf of Helix Digital Partners LLC. In fact, none of the defendants had any relationship whatsoever with Digital Partners, and Waltz intentionally concocted this scheme to fraudulently evade creditors and stymie recovery efforts. *See* Compl. ¶¶ 33, 59, 75, 78. The Complaint further alleges that Waltz committed fraud by sending Amity messages stating that it is able and intends to fulfill its payment obligations under the Indebtedness Agreement before ceasing communications, when in fact Defendants had no desire, intent, or ability to do so. *See* Compl. ¶¶ 59, 75. Such conduct comprises at least two separate predicate acts in furtherance of the scheme.

In the RICO context, Rule 9(b) requires that the complaint allege facts giving rise to a strong inference of fraudulent intent. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999). To establish a strong inference of fraudulent intent, a plaintiff must either identify circumstances that indicate conscious or reckless behavior by the defendants, or allege facts showing a motive for committing fraud and a clear opportunity for doing so. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d

17

1003832v.2

Cir. 1996); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Although Rule 9(b) requests that fraud be pled with particularity, a plaintiff need only plead circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter. *See id.*

Amity has established a strong inference of fraudulent intent with respect to the predicate acts committed by Helix. Paragraph 78 of the Complaint, which addresses the motive behind the RICO and non-RICO counts, provides in relevant part:

> Knowing that Plaintiff and other reasonable parties to an agreement expect honesty and integrity from its counterparties and expecting that the agreements' signatories were signing on behalf of the company they believed to be affiliated with and bound by the agreements – conducted and participated in the affairs of the Helix Digital, Inc. enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions for the purpose of inducing Plaintiff and other companies to enter into agreements, such as the Indebtedness Agreement, **knowing that if the Company were to default on its obligations under such agreement, Plaintiff would have difficulty pursuing recourse against the Company. As a direct result of these material representations and omissions, Waltz has successfully evaded paying Plaintiff the balance of $1,132,927.05 owed under the Indebtedness Agreement**. Additionally, Plaintiff was unable to serve the Company its Motion for Summary Judgment in Lieu of Complaint it had prepared to recover that balance, causing Plaintiff to expend additional time and resources in its pursuit of that recovery.

Compl. ¶ 78 (emphasis added).

The "material misrepresentations and omissions" alleged in Paragraph 78 of the Complaint refers to Helix's fraudulent contracts with Amity and other entities, including Bidfuse, as well as the misrepresentations made by Waltz via iMessage regarding Helix's ability to pay back the debt after defaulting on the Indebtedness Agreement and Repayment Plan. *See* Compl. ¶¶ 42-48. Waltz's representations regarding Amity's ability to pay back its debts do not "belie any inference" of fraudulent intent, as Defendant so contends, but rather ground a claim of fraud. While the issue of a defendant's state of mind is an issue of fact to be determined at trial, a deliberate misrepresentation of a promise to perform a contract constitutes a misrepresentation or fraud. *See*

18

1003832v.2

*In re Cacciatore*, No. CV-97-4654 (ERK), 1998 WL 412644, at *1 (E.D.N.Y. July 21, 1998) ("A promise is generally regarding as a representation of a present intention to perform. . . . a promise made by one not intending to perform . . . is actionable as a misrepresentation of fact").

Relatedly, a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, sufficiently grounds a claim of fraud. *See Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (upholding fraud claim where defendants repeatedly overstated net income and value of assets and the amended complaint alleged that representations were false, defendants were in a position to know that the representations were false, and the defendants knew the representations were false). In this instant action, Amity repeatedly alleges that Waltz represented that Helix was owed an outstanding balanced from a third-party, Column6 LLC. Compl. ¶¶ 42-48. The Complaint further alleges that when approached by Column6, Amity was informed that there were no large outstanding balances with any of the company's supply partners. Compl. ¶ 45. By falsely stating that money was owed to Helix, Waltz made material misrepresentations as to Helix's performance which are actionable as fraud. *See Cohen*, 25 F.3d at 1172.

Defendants unconvincingly attempt to dismiss the significance of Waltz's signing contacts on behalf of Helix Digital Partners LLC instead of Helix Digital Inc. by arguing that Amity "does not allege that it would not have entered into an agreement with Helix if it had been told the Company's proper name . . . it alleges that its collection efforts were (temporarily) hindered." At the outset, it is absurd to suggest that any commercial party would enter a contract with a company fraudulently utilizing *another* company's likeness. In making this argument, Defendants also utterly mischaracterize the fraud perpetuated; Amity specifically alleges:

> Plaintiff and other reasonable contracting parties **expect honesty and integrity from its counterparties and debtors and expected that Defendants would**

19

**conduct business and enter agreements under its registered name, that its agents would not sign agreements on behalf of an unaffiliated entity, and that they would honestly and accurately disclose the entity's ability to timely fulfill its obligations under the Indebtedness Agreement.** Plaintiff therefore reasonably relied on Defendant's representations when it entered into the Insertion Order, MSA, and Indebtedness Agreement. No company would enter into an agreement, especially an agreement to repay a debt, if its signatories knew that its counterparty's signatory was signing on behalf of an entity to which it was unaffiliated, and that the registered name of the entity to which it believed to be its counterparty was not easily discoverable.

Compl. ¶ 70 (emphasis added).

Thus, contrary to Defendants' assertion, Amity clearly alleged that it "expected that Defendants . . . would not sign agreements on behalf of an unaffiliated entity." Amity also alleged that it would not have entered the contracts if it knew that an obstacle existed as to legal recourse in the event of breach (in this case, its ability to find and sue the correct entity), and it alleged that it would not have entered into a contract if it knew that there was dishonesty on the part of the other contracting party. Compl. ¶¶ 70, 78.

The sole case cited by Defendants in support of its argument that the Complaint fails to allege fraud with specificity or a pattern of racketeering activity, *Energium Health v. Gabali*, No. 3:21-CV-2951-S, 2023 WL6392631 (N.D. Tex. Sep. 29, 2023), is inapposite. First, *Energium* is a Texas case lacking any binding authority on this matter.

Second, *Energium* does not support Defendants' contention that "repeated attempts by Helix to pay back the claimed indebtedness . . . belie any inference . . . of fraudulent intent." In *Energium*, the plaintiff propounded mail and wire fraud as predicate acts in its civil RICO claim, alleging that defendants fraudulent induced the plaintiff to invest in a business venture, but then allegedly stole and concealed the plaintiff's investment by transferring it to a wide network of shell companies with interlocking relationships. *See id.* at *1. The court concluded that the plaintiff failed to allege the requisite fraudulent intent, where the plaintiff failed to allege facts supporting

20

1003832v.2

a finding that the allegedly fraudulent invoices it received from defendant were false, omitted crucial facts, and included minute details without explaining their relevance. *See id.* at \*4-5.

*Energium* does not concern dismissal of a civil RICO claim due to any attempts by the defendant to pay back a debt owed. Instead, this case stands for the general proposition that a civil RICO claim grounded in fraud must be plead with specificity (a standard which is easily satisfied here). Furthermore, unlike the plaintiff in *Energium*, Amity specifically alleges the "who, what, when, where, why, and how" of the scheme and the predicate acts. Compl. ¶¶ 74-80.

Accordingly, the conduct alleged in the Complaint comprises at least two predicate acts of fraud and is more than sufficient to establish a civil RICO claim.

### C. Amity Sufficiently Alleges Proximate Cause

For the same reasons as those described above, the Complaint sufficiently alleges that Waltz's RICO violation is the proximate cause of Plaintiff's injury. The Complaint alleges that Waltz caused Helix to breach its contracts with Amity with the understanding that Amity would have difficulty pursuing recourse against Helix because of Defendants' scheme to deliberately misidentify the correct entity in *all* of the operative agreements. Furthermore, Amity entered the Indebtedness Agreement to collect on a debt already owed by Helix, with the expectation that payments made to Amity would be collected according to the Repayment Plan schedule. The collection of the debt forms the basis of Indebtedness Agreement, and so when Amity was not paid according to schedule and was stymied in its pursuit of Digital Partners, Amity was further injured.

Indeed, the Indebtedness Agreement provides that Amity "shall have the right to pursue all permissible legal action, claims and remedies against Helix" upon Helix's default. *See* Mack Decl., Exhibit A. The Indebtedness Agreement further provides that Amity reserves its legal and equitable rights "including its right to all available remedies against Helix under this Agreement,

21

1003832v.2

the MSA or other applicable law, including but not limited to consequential damages, lost profits, lost revenues, and the recovery of costs and attorneys' fees." *See* Mack Decl., Exhibit A. Amity has not yet recovered any such damages in connection with both the debt originally owed, and the damages to which it is entitled stemming from the breach of the Indebtedness Agreement. This is because Waltz refused to cooperate with Amity after the breach, knowing that Amity would be hindered in its efforts to sue Helix due to Defendants' fraudulent scheme. Accordingly, "Plaintiff has no legal recourse against the entity registered as Helix Digital Partners, LLC [the signatory to the contract], but instead must pursue recourse against Waltz in his personal capacity and Helix Digital, Inc. for the entire amount owed to Plaintiff under the Indebtedness Agreement, plus punitive damages and interest." Compl. ¶ 58.

Defendant's sole argument that Amity failed to allege proximate cause is that "Helix made payments under the agreement when it had the financial resources to do so, and Plaintiff has filed this lawsuit to collect the remaining amount." (Dkt. No. 42 at p.11.) The fact that Helix made occasional payments to Amity (presumably in order to stave off collection action) does not excuse the fact that it materially breached the Indebtedness Agreement, "went dark" on Amity following such breach, exercised a fraudulent scheme so that Amity would be unable to collect on the debt, and resultingly, Amity was damaged as a result. Furthermore, as the foregoing facts demonstrate, Amity did not file this lawsuit solely to collect the remaining amount owed under the Indebtedness Agreement but to collect damages pursuant to all of its rights and remedies, as permitted under contract and at law.

The cases cited by Defendants do little to support Defendants' argument, because they stand for the general proposition that a complaint must allege proximate cause with specificity when pleading civil RICO, instead of bolstering Defendants' fictional contention that making

occasional payments "when [Helix] had the financial resources to do so" supposedly demonstrates a lack of proximate cause. *See Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 147 (2d Cir. 2018); *Toohey v. Portfolio Recovery Associates, LLC*, No. 15 Civ. 8098, 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016).

Accordingly, for all of the foregoing reasons, Amity has sufficiently plead a racketeering scheme pursuant to 18 U.S.C. § 1962(c) and the Court should not dismiss the civil RICO claims against Waltz.

## IV.    DEFENDANTS SHOULD BE SANCTIONED PURSUANT TO RULE 11 AND THE COURT'S DISCRETION

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). A Rule 11 violation occurs "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kochisarli v. Tenoso*, No. 02-CV-4320-DRH-MLO, 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006) (citation omitted). The standard is an objective one, so that a lawyer cannot ignore evidence in plain sight that an allegation is false. *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002). By filing the Motion to Vacate and the accompanying Waltz Declaration, Defendants and their counsel have blatantly run afoul of this standard. Specifically, the Waltz Declaration contains the following false statements:

- The Waltz Declaration falsely states that Waltz was unaware that the Court had entered a default judgment against Helix until Waltz was advised by counsel. *See* Waltz Decl. ¶ 4. This statement is false: Waltz was present during the February 29 Hearing when default judgment was entered against Helix. Waltz further stated his intent not to retain a lawyer for Helix and that he would not interfere "with the process [the Court has] begun to get a default judgment against the trade debt." Feb. 29, 2024 Hearing Tr. at 5:14-20.

23

1003832v.2

- The Waltz Declaration falsely states that Waltz did not understand that an appearance on behalf of Helix Digital Inc. was required in addition to his own pro se appearance. *See* Waltz Decl. ¶ 8. This allegation is false: Waltz was informed by the Court during the February 29 Hearing that under federal law, Waltz was required to retain counsel for Helix, the Court gave Waltz an opportunity to retain counsel for Helix prior to entry of default, and Waltz stated that he would not be seeking an attorney to represent Helix. Feb. 29, 2024 Hearing Tr. at 3:2-14.

These blatantly false statements demonstrate that Waltz intended to deceive the Court, which is sanctionable conduct. Separate and apart from Rule 11, a court has the inherent power to impose sanctions on a party for perpetuating a fraud upon the Court. *See Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016). Such sanctions are warranted if it is established by clear and convincing evidence that [a party] has "set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate' the action." *See id.*, citing *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 Fed. Appx. 25, 25 (2d Cir. 2011) The February 29 Hearing transcript establishes that Waltz set in motion yet another fraudulent scheme to make false representations to the Court because he regretted previously stipulating to the Court's entry of default.

At the very least, Waltz's counsel did not closely review the docket or conduct a reasonable pre-filing investigation. Such conduct may also form the basis for the imposition of sanctions under Rule 11. *See Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851-NGG, 2007 WL 1026411, at *2 (E.D.N.Y. Mar. 30, 2007) ("If a factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support, sanctions are appropriate unless the paper includes a specific disclaimer that additional investigation is necessary."); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp.2d 209, 229 (E.D.N.Y. 2002) (imposing Rule 11 sanctions where "a reasonable inquiry conducted prior to filing the . . . Complaint would have shown that the allegation . . . lacked evidentiary support").

24

Accordingly, this Court should sanction Defendants and their counsel pursuant to Rule 11 and/or the Court's own discretion.

### V.   IN THE ALTERNATIVE, THE COURT SHOULD ONLY DISMISS THE COMPLAINT WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD

In the event this Court is inclined to grant any portion of the Defendants' motion to dismiss, which it should not, Amity respectfully requests that any dismissal be without prejudice and leave be granted to Amity to file an amended pleading to correct any perceived deficiency. *See* 28 U.S.C. § 1653 ("[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"); Fed. R. Civ. P. 15(a)(2) ("[t]he Court should freely give leave [to amend] when justice so requires"); *Mayes v. 490 Habitat, Inc.*, No. 18-CV-1427(SJF), 2020 WL 587112, at *4 (E.D.N.Y. Feb. 6, 2020) (granting plaintiffs leave to amend complaint pursuant to Rule 15 upon vacating the default judgment entered against defendant); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006) (granting leave to amend complaint to supplement the law and facts regarding the civil RICO claim).

### CONCLUSION

For all the foregoing reasons, Amity respectfully requests that this Court deny Defendants' motion to vacate the default judgment entered against Helix, deny Defendants' motion to dismiss the Complaint, and deny Defendant's motion to dismiss Amity's RICO claim against Waltz. Amity further requests that the Court grant an award of sanctions pursuant to Rule 11 and/or the Court's own discretion, and such other and further relief as this Court deems just and proper.

1003832v.2

Dated: New York, New York
       May 31, 2024

DAVIDOFF HUTCHER & CITRON LLP

By:    /s/ _William H. Mack_

William H. Mack, Esq. (WM-7786)
605 Third Avenue
New York, New York 10158
(212) 557-7200
*Attorneys for Plaintiff*

26

1003832v.2