UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMITY DIGITAL LLC,

                    Plaintiff,

    -against-

HELIX DIGITAL INC. and JAMES WALTZ,

                    Defendants.

23-CV-11044-LTS

MEMORANDUM ORDER

        Amity Digital LLC ("Amity" or "Plaintiff") brings this action asserting claims for violations of the civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., against James Waltz ("Waltz"), breach of contract against Helix Digital Inc. ("Helix" and, together with Waltz, "Defendants"), and common law claims for fraud, fraudulent concealment, negligent misrepresentation, and unjust enrichment against both Defendants. (Docket entry no. 1 (the "Complaint" or "Compl.").) The Court has subject matter jurisdiction of this action under 28 U.S.C. sections 1331 and 1332.

        Before the Court are Defendants' motions to vacate the entry of default against Defendant Helix pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, and to dismiss the Complaint as against both Defendants for failure to state a claim under RICO and otherwise for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket entry no. 42 (the "Defense Motions").) Also pending is Plaintiff's motion for sanctions against Defendants and counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent power. (Docket entry no. 48.)

        The Court has considered the parties' submissions carefully and, for the following reasons, rules as follows: Defendants' motion to vacate Helix's default is granted in part and

denied in part, and Defendants' motion to dismiss is denied entirely. Plaintiff's motion for sanctions is denied.

BACKGROUND

Unless otherwise noted, the following summary is drawn from the Complaint, all well-pleaded allegations of which are presumed true for the purposes of this motion practice.[1]

Plaintiff Amity is a limited liability advertising technology ("AdTech") company, whose sole member is a corporate entity that is a citizen of New York. (Compl. ¶ 11; see also docket entry no. 51 ("Magli Decl.").) Defendant Helix is an AdTech company organized and existing under the laws of Delaware and headquartered in New Jersey. (Compl. ¶¶ 3, 13.) James Waltz is the president and CEO of Helix and resides in New Jersey. (Id. ¶ 12.)

Around July 2020, Amity entered into several business agreements with Helix, which was operating under the purported name "Helix Digital Partners, LLC" ("Digital Partners"). (Id. ¶¶ 2, 37.) Plaintiff alleges that Defendants never truly owned or operated under the Digital Partners name, but nevertheless held themselves out to be the Digital Partners entity rather than operating under their true business name, Helix Digital Inc. (Id. ¶¶ 1, 2.) In particular, Defendant Waltz and non-party Thomas Walsh, in their purported capacities as officers and co-presidents of Digital Partners, entered various service contracts with Amity including an Insertion Order and a Master Services Agreement, under which Helix, as advertiser, would provide advertising materials to Amity, as publisher, which would then market and

---

[1]   The Court has also considered factual matter drawn from documents which are integral to, attached to, or incorporated by reference in the Complaint. See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("[E]xtrinsic documents may be considered as part of the pleadings if they are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.").

promote the materials. (Id. ¶¶ 3-6, 37-39.) After Defendants failed to repay various outstanding debts to Amity for these services rendered, the parties entered into an Indebtedness Acknowledgment and Payment Plan Agreement (see docket entry no. 14-4 (the "Indebtedness Agreement")). (Id. ¶¶ 40-42.) In each of the contracts, Defendants represented that the legal name of the business entity was Helix Digital Partners LLC and that it was a limited liability company organized in Delaware, with business operations at 4 Circle Drive, Rumson, New Jersey. (Compl. ¶¶ 38, 39.)

The Indebtedness Agreement provided that Helix would repay the outstanding balance of $1,544,270.16 it owed to Amity between May 22, 2023, and September 15, 2024, in a series of 22 installment payments. (Id. ¶ 41.) Helix paid the first installment of $50,000 but, on September 15, 2023, Helix missed a $285,646.15 installment payment and then "went dark" by failing to respond to Amity's communications asking for the outstanding payment. (Id. ¶ 42.) On October 17, 2023, and October 30, 2023, Helix paid $50,000, which was again less than the amount owed under the installment plan. (Id. ¶ 49.) Under the terms of the Indebtedness Agreement, failure to make three consecutive payments put Helix in default. (Id. ¶ 50 & n.3.)

After attempting to collect on the outstanding debt, Plaintiff attempted to file a Motion for Summary Judgment in Lieu of Complaint against Helix in state court on November 17, 2023 (id. ¶ 51), but, after serving the registered agent of Digital Partners, Amity discovered that Defendants were not, in fact, the business operating under that registered name (id. ¶¶ 51-52). Plaintiff discovered that Helix Digital Partners, LLC, is in fact a hydroelectric power company incorporated in Delaware with no connection to Defendants or their business. (Id. ¶ 2.) Plaintiff was informed by Digital Partners' registered agent, Nick Ivancic, that Digital Partners had received several similar inquiries from other businesses that had also been misled by Helix's

actions and sought to collect Helix's outstanding debts from Digital Partners. (Id. ¶ 54.) Ivancic sent Amity another demand letter Digital Partners had received on November 7, 2023, from counsel for an entity named Trendesk.TV LLC d/b/a/ Bidfuse, seeking to collect $235,456.00 from Digital Partners as a debt purportedly owed by Helix. (Id. ¶ 54.)

### Procedural History

Plaintiff initiated this action on December 20, 2023. (Compl.) Plaintiff properly served Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure on December 27, 2023. (Docket entry no. 5.) When Defendants failed to answer or file any notice of appearance in this action by January 23, 2024, Plaintiff obtained a Certificate of Default from the Clerk of Court. (Docket entry no. 9.) On January 25, 2024, Judge Broderick issued an Order to Show Cause to both Defendants. (Docket entry no. 25.) On February 29, 2024, the Court held a Show Cause hearing at which Defendant Waltz appeared pro se. At that hearing, Judge Broderick informed Waltz that he could not represent Helix pro se, and Judge Broderick directed Waltz to file a notice of appearance for himself if he wished to defend the claims asserted against him as an individual. (See docket entry no. 50-2 ("Feb. Tr.") at 3:2-5, 10:11-16.) Waltz indicated, in his capacity as the principal of Helix Digital LLC, that he did not intend to retain counsel to defend the action with respect to the breach of contract claims against Helix. (Id. at 5:14-20.) Judge Broderick stated at the hearing that the Court would enter default as to Helix's liability and "hold in abeyance" a final determination on damages following a determination of Waltz's liability and an inquest on damages. (Id. at 6:4-10.) Finally, Judge Broderick ordered Waltz to provide his contact information to Plaintiff's counsel and the Court's pro se office, so that he could comply with the Court's direction to meet and confer with counsel about a potential stipulation as to the judgment of damages with respect to Helix. (Id. at 8:1-15, 9:15-17, 10:11-16.)

On March 1, 2024, Judge Broderick entered a written order providing that "default judgment as to liability is entered in favor of Amity Digital LLC . . . and against Helix Digital Inc." (Docket entry no. 20 (the "Default Judgment").) The appearing parties were again ordered to meet and confer, by March 15, 2024, "to determine whether a stipulation of judgment regarding Helix Digital's liability can be reached." (Id.) On March 14, 2024, Plaintiff's counsel informed Judge Broderick that Waltz had never provided his contact information nor communicated with Plaintiff to arrange the court-ordered meet and confer. (Docket entry no. 21.) On March 17, 2024, Judge Broderick again ordered Waltz to contact the pro se office by April 1, 2024, warning that a default judgment could be entered against him if he did not. (Docket entry nos. 22, 23.)

When Waltz again failed to comply (see docket entry nos. 22, 25), the Court held a second Show Cause hearing on May 2, 2024. At that hearing, Judge Broderick gave Waltz a final chance to enter a notice of appearance and confer with Plaintiff's counsel. (Docket entry no. 39 ("May Tr.") at 11.) Waltz was given an extension to May 17, 2024, to answer the Complaint. (Docket entry no. 38.) On May 17, 2024, Defense counsel first appeared on behalf of both Defendants by filing the instant Defense Motions. This case was transferred to the undersigned on December 4, 2024.

## DISCUSSION

Motion to Vacate

The Federal Rules of Civil Procedure provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). After a default has been entered against a

defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). It is well established, however, that default judgments are disfavored, and there is a "strong public policy favoring resolving disputes on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) (citation omitted). Where default is entered "only to liability, with damages yet to be determined," that judgment does not "constitute a final judgment and therefore should more appropriately be understood as an entry of default." Henry v. Oluwole, 108 F.4th 45, 51 (2d Cir. 2024) (internal quotation and citation omitted).

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Good cause "should be construed generously." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Indeed, when deciding a motion to vacate a default judgment, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (citing Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)).

In determining whether to set aside a defendant's default, the Court must consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Powerserve, 239 F.3d at 514 (internal citation omitted). The Court may also consider relevant equitable factors, including whether the failure to appear was "a mistake made in good-faith and whether the entry of default would bring about a harsh or unfair result." Enron Oil Corp., 10 F.3d at 96. "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Id.

### Willfulness

The first factor the Court must consider is the willfulness of Defendant's default. Willfulness must amount to "conduct that is more than merely negligent or careless," but must be "egregious or deliberate conduct, such as where [the default was] . . . a strategic decision[.]" Drywall Tapers & Pointers of Greater N.Y. Loc. Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc., 343 F.R.D. 358, 364 (S.D.N.Y. 2022) (citation omitted). Helix asserts that its default was not willful because it was the result of James Waltz's "mistaken belief that a Delaware corporation could only be served through its registered agent in Delaware." (Docket entry no. 42 ("Def. Mem.") at 5.) This argument is unpersuasive. Helix Digital was properly served on December 27, 2023. (Docket entry no. 5.) One month later, the Court issued a clear Order to Show Cause, informing Helix that it must appear in this action or risk being found liable through a default judgment. (Docket entry no. 17.) This Order to Show Cause was again properly served on Helix. (Docket entry no. 18.) One month after that, the Court held a hearing during which Waltz appeared (in his capacity as a pro se defendant for himself only) and indicated, as the principal of Helix, that he did not intend to retain counsel to defend the claims against the company. (Feb. Tr. at 14-20.) Not only did Waltz then take over two additional months to file a notice of appearance in this action himself, but during that time he never made any attempt to meet and confer with Plaintiff's counsel regarding Helix's defense, and he failed to retain counsel until May 2024, almost five months after this action was initiated. From the record before the Court, it appears that Helix – through its principal – may have made a tactical decision to default in this action. Such deliberately evasive conduct, "even if not in bad faith," can demonstrate a sufficiently willful choice to default. See Cho v. Osaka Zen Spa, No. 19-CV-7935-ER, 2023 WL 5003570, at *5 (S.D.N.Y. Aug. 4, 2023).

This factor therefore weighs against Helix.

Prejudice to Adversary

In the context of a Rule 55 motion, a finding of prejudice to plaintiffs must be based on something more than a brief delay in the prosecution of the litigation or the plaintiffs' costs and fees from pursuing a default judgment. See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). Where a plaintiff claims they were prejudiced by a delay, "it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" Id. at 916 (citation omitted). Plaintiff argues that it would be prejudiced by vacatur because of the delay in this action and the extra costs that the various Show Cause hearings have added to its prosecution of these claims. (Docket entry no. 49 ("Pl. Mem.") at 14-15.) Plaintiff further argues that vacating the default judgment "would likely create significant and costly delays during discovery." (Id. at 15.) Delays occasioned merely by the presentation of a defense and the need to litigate the case on the merits do not, however, constitute prejudice of the sort that would weigh against denial of an application for relief from default. Additionally, because the claims against Waltz survive and are predicated on the same underlying facts as the claims against Helix, discovery in this action will not be complicated by vacatur of the claims against Helix.

Plaintiff also contends that it would be prejudiced by a delay of its recovery of the trade debt owed by Helix, to which Plaintiff contends Waltz already stipulated in the February and May hearings. (Id. at 15; see also Feb. Tr. at 3:2-14.) The Second Circuit has made clear, however, that "delay alone is not a sufficient basis for establishing prejudice." Henry, 108 F.4th at 52-53 (citation omitted). Plaintiff does not argue, for instance, that delay in recovery would result in the loss of evidence or provide opportunities for fraud and collusion.

Therefore, this factor weighs in favor of granting vacatur.

Meritorious Defenses

Finally, the Court must consider whether the Defendant has presented meritorious arguments "beyond conclusory denials" to support its defense. Enron Oil Corp., 10 F.3d at 98. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). Helix has not proffered any meritorious defenses to Plaintiff's breach of contract claim. (See generally Def. Mem.) To the contrary, Helix's principal seemed, early on in the proceedings, to stipulate to Helix's liability for the breach of contract claim. (Feb. Tr. at 3:12-16, 5:17-20.)

Defendants do, however, advance defenses to Plaintiff's fraud and unjust enrichment claims asserted against Helix. (Def. Mem. at 10-12 (advancing defenses to Plaintiff's allegations of fraud, specifically with respect to Plaintiff's RICO claim); see also docket entry no. 52 ("Def. Reply") at 10-11 (arguing that Plaintiff has failed to plead viable claims of unjust enrichment, because it is duplicative of the breach of contract claim, and fraud, because the alleged misrepresentations were not material, Defendants lacked fraudulent intent, and the misrepresentations were not the proximate cause of Plaintiff's injury).) These defenses may be meritorious. See, e.g., Skyline Restoration, Inc. v. Great Am. Restoration Servs. Inc., No. 18-CV-5634, 2019 WL 5150207, at *4 (E.D.N.Y. Aug. 5, 2019) (finding, under New York law, that where a valid contract is found to govern a dispute, a plaintiff cannot also prevail under a duplicative unjust enrichment theory). In any event, the defenses Helix now advances as to these claims turn on legal issues that will also be litigated as part of the claims against Waltz. The Court therefore finds that the potential for valid defenses, and the risk of inconsistent

judgments if the liability against Helix were upheld while these issues are litigated with respect to Waltz, weigh in favor of vacatur of the default as to the remaining claims against Helix.

For these reasons, the Court finds that the relevant factors weigh in favor of upholding the default judgment entered against Defendant Helix as to liability for Plaintiff's breach of contract claim only, for which neither Mr. Waltz nor counsel has offered any defenses. Given the possibility of meritorious defenses to Plaintiff's additional claims and Plaintiff's failure to demonstrate that it would suffer prejudice by reason of vacatur of the default as to all of its other claims against Helix, the Court finds that the Enron factors weigh in favor of vacating Helix's default as to those remaining claims. Helix's motion to vacate default is therefore denied with respect to Helix's liability for the breach of contract but granted with respect to all other claims.

Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This requirement is satisfied when the factual content of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that contains only "naked assertions" or a "formulaic recitation of the elements of the cause of action" cannot suffice. Twombly, 550 U.S. at 555. "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch

Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

RICO Claim

To plead a cognizable RICO claim, Amity must allege facts showing that Waltz "engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property." Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 458 (S.D.N.Y. 2009) (citing Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).

A RICO "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (Westlaw through P.L. 119-1). A pattern of racketeering activity requires at least two predicate acts of racketeering activity within ten years. 18 U.S.C. § 1961(5); see also Zito v. Leasecomm Corp., No. 02-CV-8074-GEL, 2004 WL 2211650, at *6 (S.D.N.Y. Sept. 30, 2004). The predicate acts that qualify as "racketeering activity" are set forth in 18 U.S.C. section 1961(1). RICO claims predicated on acts of mail or wire fraud must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996).

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff claiming fraud to plead with particularity "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same,

(3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 121 (S.D.N.Y. 1993). "To satisfy Rule 9(b), a RICO complaint should include: the identities of the actors, the precise actions taken or statements made, the time, place, and methods of communication including dates of telephone calls or mailings, and the precise effects of the fraudulent activity." Procapui-Productores de Camaroes De Icapui Ltda. v. Layani, No. 07-CV-6627-BSJ, 2008 WL 3338199, at *3 (S.D.N.Y. Jan. 11, 2008) (citing McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992)); see also In re Sumitomo Copper Litig., 995 F. Supp. 451, 455 (S.D.N.Y. 1998) ("Rule 9(b) has great 'urgency' in civil RICO actions. . . . Indeed, the 'overwhelming trend' among the lower courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits." (citations omitted)).

Plaintiff alleges that Waltz used Helix Digital Inc., as an enterprise through which he perpetuated a scheme to defraud various parties, including Plaintiff and other businesses. (Compl. ¶¶ 54, 90.) Specifically, Amity alleges that Waltz used the enterprise as a vehicle to make material misrepresentations and omissions "for the purpose of inducing Plaintiff and other companies to enter into agreements . . . knowing that if the Company [Helix] were to default on its obligations under such agreement, Plaintiff would have difficulty pursuing recourse against the Company [Helix]." (Id. ¶ 78.) The alleged misrepresentations included representations that the name of "the Company" was, in fact, Helix Digital Partners, LLC, that Waltz and Walsh had the authority to sign and enter agreements on behalf of Digital Partners, and that the Company had the ability and intention to repay debts owed to Amity upon receipt of outstanding money from its debtors. (Id. ¶¶ 59, 79.)

Defendants contend that Plaintiff has failed to plead a RICO claim against Waltz, first, because Amity has insufficiently pleaded any predicate acts of mail or wire fraud with the heightened specificity required by Rule 9.  (Def. Mem. at 7.)  In response, Plaintiff points to the allegedly fraudulent contracts into which Waltz induced Plaintiff and other parties to enter.  (See Pl. Mem. at 16-17; see also Compl. ¶ 77.)  What Plaintiff fails to identify, however, are specific instances of fraudulent mailings or wire communications that Waltz conducted to perpetuate the scheme.  See Levy, 148 F.R.D. at 121 (finding plaintiff failed to plead a RICO claim where the complaint alleged "the existence of wire and mail fraud, [but offered] no dates for the occurrence of those acts . . . [and failed] to describe even one particular instance of wire or mail fraud").

The only fraudulent statements alleged with the requisite particularity are the messages Waltz sent between September and October 2023, in an iMessage exchange with Stephen Magli (a manager at Amity) wherein Waltz allegedly misrepresented Defendants' ability and intention to repay the outstanding payments owed pursuant to the Indebtedness Agreement.  (Compl. ¶¶ 42-48.)  Plaintiff alleges that Magli sent Waltz a message before the missed payment on September 15, 2023, asking whether Helix would make the payment.  Waltz responded by "stating that the Company was owed an outstanding balance owed by Column 6 LLC ("Column 6"), a company to which Helix served as a supply partner, and that it was pushing Column6 for payment."  (Id. ¶ 43.)  On September 5, 2023, and September 11, 2023, Magli messaged Waltz to ask about payment and Waltz responded "that the Company was waiting for payment from Column6, that it was in the process of attempting to bridge that gap by finding additional investment, and that once found, it would 'continue the payment plan or paid [sic] in full,' but that timing was 'tbd.'"  (Id. ¶ 44.)  On September 29, 2023, Magli confronted Waltz about Column6's purported denial that they owed any money to Helix and informed Waltz that Amity

would file suit for Helix's outstanding balance. (Id. ¶¶ 45-46.) Waltz sent Magli a series of screenshots of communications between Waltz and an unnamed individual and said that those screenshots constituted "proof" that Helix was owed payment. (Id. ¶ 47.)

Drawing all plausible inferences in Plaintiff's favor, the Court finds these predicate acts of wire fraud have been plead with sufficient particularity to sustain Amity's RICO claim at this stage. Plaintiff alleges that these fraudulent wire communications were used in furtherance of Waltz's scheme to trick various businesses into entering deals with Helix, collect the benefit of those deals, and then avoid repayment. (Id. ¶ 1.) The specified iMessages allegedly contain misrepresentations regarding the financial condition of Helix and its ability and intention to repay its debt to Amity and which were intended to mislead and delay Plaintiff from seeking legal action to recover the debt under the Indebtedness Agreement. "The Second Circuit has held that although the party alleging mail or wire fraud does not have to prove that the victim was actually defrauded, it must show that harm or injury to the victim was contemplated by the schemer." City of New York v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 552 (S.D.N.Y. 2005) (citing United States v. Dinome, 86 F.3d 277, 283 (2d Cir. 1996)). These alleged misrepresentations, in light of Plaintiff's additional allegations of Waltz's evasive and dishonest conduct, sufficiently plead circumstances giving rise to an inference of fraudulent intent.[2]

---

[2] Defendants briefly argue that "the repeated attempts by Helix to pay back the claimed indebtedness, as alleged in the Complaint, belie any inference . . . of fraudulent intent." (Def. Mem. at 9.) This argument is unpersuasive. While Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity, a defendant's fraudulent intent can be pleaded more generally. Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Amity has satisfied this requirement by alleging circumstances, including misrepresentations that Waltz could not plausibly have made without at least reckless disregard for the truth, which give rise to a strong inference of Waltz's fraudulent intent.

Defendants next contend that the alleged misrepresentations were not material. This argument is unpersuasive. Under the mail and wire fraud statutes, "a misrepresentation is material if it is capable of influencing the decisionmaker, no matter what the victim decides to do." United States v. Corsey, 723 F.3d 366, 373 n.3 (2d Cir. 2013) (per curiam). Taking all of Plaintiff's allegations as true, Waltz (and others working for him) misrepresented their company name and their authority to enter contracts and conduct business on behalf of "Helix Digital Partners." (Compl. ¶ 59.) Additionally, Waltz misrepresented his business' financial circumstances and intention to repay outstanding debts in order to mislead Plaintiff and prevent Plaintiff from taking legal action to recover on the debt. (Compl. ¶¶ 46-47.) These representations are clearly material to the business transactions and actions alleged in the Complaint.

Finally, Defendants argue, unavailingly, that the RICO violations were not the proximate cause of Plaintiff's injury. (Def. Mem. at 10-11.) Plaintiff alleges that the RICO scheme encompassed a pattern of fraudulent misrepresentations made with the specific intention to defraud businesses (like Amity) into entering contracts involving large sums of money when Helix did not honestly represent the identity of its business or its ability to repay those debts. And, indeed, Plaintiff entered into business with Helix and is still owed over $1.1 million, a sum which has been outstanding for over two years. (Compl. ¶ 71.) Drawing all inferences in Plaintiff's favor, Amity has plausibly alleged that it has been injured as a result of the RICO scheme. See Empire Merchants, LLC v. Reliable Churchill LLP, 902 F.3d 132, 141 (2d Cir. 2018) ("[A] plaintiff suing under RICO must establish that the RICO offense was the 'proximate cause' of the plaintiff's injuries." (citation omitted)).

Defendants' motion to dismiss the Civil RICO claim is therefore denied.

Subject Matter Jurisdiction

Defendants next move to dismiss all state claims in this action for lack of subject matter jurisdiction. (See Defense Motions.) An action or claim must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. Fed. R. Civ. P. 12(b)(1); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction has the burden of establishing by a preponderance of the evidence that jurisdiction exists. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). When determining a motion to dismiss for a lack of subject matter jurisdiction, the Court must accept all factual allegations plead in the Complaint as true, Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006), but the Court may also consider relevant materials beyond the pleadings. Makarova, 201 F.3d at 113. Plaintiffs must show jurisdiction affirmatively; the Court will not draw argumentative inferences in their favor. APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

Because the Court finds that Amity's RICO claim is pleaded sufficiently to survive dismissal, the Court has federal question jurisdiction of that claim under 28 U.S.C. section 1331 and supplemental jurisdiction of the remaining claims in this action under 28 U.S.C. section 1367. The Court also finds that it has original jurisdiction of the remaining state claims under 28 U.S.C. section 1332. Although Defendants correctly assert that the Complaint failed to plead the citizenship of all parties adequately, Plaintiff has since filed the Declaration of Joseph Magli, asserting that Plaintiff's LLC has one corporate member that is solely a citizen of the state of New York. (Magli Decl. ¶ 2.) "[W]here the facts necessary to the establishment of

diversity jurisdiction are subsequently determined to have obtained all along, a federal court may . . . allow a complaint to be amended to assert those necessary facts[.]" Trans Union LLC v. Lindor, 393 F. App'x 786, 789 (2d Cir. 2010) (ellipsis in original) (citation omitted).  An adequate pleading of diversity is not "itself a necessary element of diversity jurisdiction, and therefore a pre-requisite for there being diversity jurisdiction in a case at all." Jacobs v. Patent Enf't Fund, Inc., 230 F.3d 565, 567-68 (2d Cir. 2000).  For clarity, however, the Court directs plaintiff to amend the Complaint to allege adequately the citizenship of all parties, making it clear that the Court can exercise original jurisdiction of all claims in this action without regard to the viability of the RICO claim.

Sanctions

The Court next turns to Plaintiff's cross motion for Rule 11 sanctions against Defendants and counsel for their purportedly violative behavior in filing the Motion to Vacate and the accompanying Waltz Declaration.  (Pl. Mem. at 23-24.)  Under Rule 11, "[s]anctions may not be imposed unless an allegation is utterly lacking in support . . . .  This is an objective, not a subjective, standard 'intended to eliminate any empty-head pure-heart justification for patently frivolous arguments.'" Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (internal citations omitted).  Rule 11(c)(2) allows a party to make a motion to sanction specific conduct that allegedly violates Rule 11(b) but requires that such motion be served under Rule 5, and provides that the motion "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).

Without reaching the merits of Plaintiff's argument that the Waltz declaration ran "blatantly . . . afoul of [the Rule 11] standard," (Pl. Mem. at 23), the Court finds that Plaintiff failed to comply with the procedural requirements of Rule 11. Plaintiff has not demonstrated that it complied with the 21-day safe harbor provision by serving the motion upon Defense counsel before filing the motion with the Court. See Fed. R. Civ. P. 11(c)(2). Indeed, although Plaintiff's motion for sanctions was re-filed on June 7, 2024, after an initial docketing error, it was first filed on May 31, 2024, only 14 days after Defendants filed their allegedly offending brief and affidavit. (See docket entry no. 44.) "The safe-harbor provision is a strict procedural requirement." Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) (collecting cases). The motion for sanctions under Rule 11 is therefore denied.

Notwithstanding Rule 11, the Court has the inherent power to impose sanctions if there is clear and convincing evidence that a party has "set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." Almeciga v. Ctr. for Investigative Reporting, Inc., 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016).

Plaintiff contends that the Waltz declaration contains the following "blatantly false" statements:

> The Waltz Declaration falsely states that Waltz was unaware that the Court had entered a default judgment against Helix until Waltz was advised by counsel. See Waltz Decl. ¶ 4. This statement is false: Waltz was present during the February 29 Hearing when default judgment was entered against Helix. Waltz further stated his intent not to retain a lawyer for Helix and that he would not interfere "with the process [the Court has] begun to get a default judgment against the trade debt." Feb. 29, 2024 Hearing Tr. at 5:14-20.

> The Waltz Declaration falsely states that Waltz did not understand that an appearance on behalf of Helix Digital Inc. was required in addition to his own pro se appearance. *See* Waltz Decl. ¶ 8. This allegation is false: Waltz was informed by the Court during the February 29 Hearing that under federal law, Waltz was required to retain counsel for Helix, the Court gave Waltz an opportunity to retain counsel for Helix prior to entry of default, and Waltz stated that he would not be seeking an attorney to represent Helix. Feb. 29, 2024 Hearing Tr. at 3:2-14.

(Pl. Mem. at 23-24.) These examples do not rise to the standard of conduct sanctionable under the Court's inherent power to sanction a party for perpetuating fraud on the Court. The Court cannot find obvious fraud from the statements in Waltz's declaration. Although many of the statements appear at odds with the information communicated to Waltz at the February and May conferences, during which he appeared as a pro se litigant, the Court cannot find clear deception given Waltz's allegations that he did not understand the default proceedings against Helix.

Plaintiff's motion for sanctions is denied entirely.

## CONCLUSION

For the foregoing reasons, the motion to vacate the default against Defendant Helix is denied with respect to Plaintiff's breach of contract claim and granted with respect to all other claims. The Court will hold in abeyance the determination of a final judgment with respect to Helix on the contract claim pending the resolution of the remaining claims against both Defendants. Defendants' motion to dismiss Plaintiff's civil RICO claim (Count I) for failure to state a claim is denied. Defendants' motion to dismiss the remaining claims (Counts II, III, IV, and VI) for lack of subject matter jurisdiction is denied.

   This Memorandum Order resolves docket entry nos. 42, 48.  This action will be referred to Magistrate Judge Wang for general pretrial management.

   SO ORDERED.

Dated: New York, New York
   March 25, 2025

                 /s/ Laura Taylor Swain
                LAURA TAYLOR SWAIN
                Chief United States District Judge